**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 15-3353, 15-3354 and 15-3355
_____

IN RE: VEHICLE CARRIER SERVICES ANTITRUST
LITIGATION

Direct Purchaser Plaintiffs Cargo Agents, Inc.;
International Transport Management Corp.;
and Manaco International Forwarders, Inc.;
Appellants in 15-3353

Martens Cars of Washington, Inc.; Hudson Charleston
Acquisition, LLC d/b/a Hudson Nissan; John O'Neil Johnson
Toyota, LLC; Hudson Gastonia Acquisition, LLC; HC
Acquisition, LLC d/b/a Toyota of Bristol; Desert European
Motorcars, Ltd; Hodges Imported Cars, Inc. d/b/a Hodges
Subaru; Scotland Car Yard Enterprises d/b/a San Rafael
Mitsubishi; Hartley Buick/GMC Truck, Inc. d/b/a Hartley
Honda; Panama City Automotive Group, Inc.d/b/a John Lee
Nissan; Empire Nissan of Santa Rosa, LLC,
Appellants in 15-3354

End Payor Plaintiffs; Truck and Equipment Dealer Plaintiffs,
Appellants in 15-3355

_____

ON APPEAL FROM THE UNITED STATES DISTRICT
COURT FOR THE DISTRICT OF NEW JERSEY
(No. 2:13-cv-03306, MDL No. 2471)
District Judge: Hon. Esther Salas
_____

Argued: November 17, 2016
_____

Before: AMBRO, SHWARTZ, FUENTES, Circuit Judges.

(Opinion Filed:  January 18, 2017)
_____

Kit Pierson
Christopher J. Cormier
David A. Young
Cohen Milstein Sellers & Toll PLLC
1100 New York Avenue, N.W.
Suite 500 West
Washington, D.C. 20005

Robert N. Kaplan
Richard J. Kilsheimer          [ARGUED]
Gregory K. Arenson
Joshua H. Saltzman
Kaplan Fox & Kilsheimer LLP
850 Third Avenue, 14th Floor
New York, NY 10022

Steven A. Kanner

2

Michael J. Freed
Michael E. Moskovitz
Freed Kanner London & Millen LLC
2201 Waukegan Road, Suite 130
Bannockburn, IL 60015

Lewis H. Goldfarb
McElroy, Deutsch, Mulvaney & Carpenter, LLP
1300 Mount Kemble Avenue
P.O. Box 2075
Morristown, NJ 07962

Solomon B. Cera
C. Andrew Dirksen
Cera LLP
595 Market Street, Suite 2300
San Francisco, CA 94105

Joseph C. Kohn
Douglas A. Abrahams
William E. Hoese
Kohn Swift & Graf, P.C.
One South Broad Street, Suite 2100
Philadelphia, PA 19107

Lee Albert
Gregory B. Linkh
Glancy Prongay & Murray LLP
122 East 42nd Street, Suite 2920
New York, NY 10168

Gregory P. Hansel
Randall B. Weill

Michael Kaplan
Jonathan G. Mermin
Michael S. Smith
Preti, Flaherty, Beliveau & Pachios LLP
One City Center
P.O. Box 9546
Portland, ME 04112

Eugene A. Spector
Jeffrey J. Corrigan
Jay S. Cohen
Rachel E. Kopp
Spector Roseman Kodroff & Willis, P.C.
1818 Market Street, Suite 2500
Philadelphia, PA 19103

W. Joseph Bruckner
Heidi M. Silton
Lockridge Grindal Nausen P.L.L.P.
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401

Vincent J. Esades
Heins Mills & Olson, P.L.C.
310 Clifton Avenue
Minneapolis, MN 55403

Joseph J. DePalma
Katrina Carroll
Steven J. Greenfogel
Lite DePalma Greenberg, LLC
570 Broad Street, Suite 1201
Newark, NJ 07102

Edward D. Greenberg
David K. Monroe
GKG Law, P.C.
1055 Thomas Jefferson Street, N.W.
Suite 500
Washington, D.C. 20007

Benjamin Bianco
Gregory A. Frank
Frank LLP
275 Madison Avenue, Suite 705
New York, NY 10016

  Counsel for Appellants Cargo Agents, Inc.,
  International Transport Management Corp.,
  and Manaco International Forwarders, Inc.

Peter S. Pearlman
Cohn Lifland Pearlman Herrmann & Knopf LLP
Park 80 Plaza West-One
250 Pehle Avenue, Suite 401
Saddle Brook, NJ 07663

Jonathon W. Cuneo
Joel Davidow
Katherine Van Dyck
Daniel Cohen
Cuneo Gilbert & LaDuca, LLP
507 C Street N.E.
Washington, D.C. 20002

Benjamin David Elga

Cuneo Gilbert & LaDuca, LLP
16 Court Street, Suite 1012
Brooklyn, NY 11241

Don Barrett
David McMullan
Brian Herrington
Barrett Law Group, P.A.
404 Court Square
P.O. Box 927
Lexington, MS 39095

Shawn M. Raiter
Paul A. Sand
Larson King, LLP
2800 Wells Fargo Place
30 East Seventh Street
St. Paul, MN 55101

Dewitt Lovelace
Valerie Nettles
Lovelace & Associates, P.A.
Suite 200
12870 U.S. Highway 98 West
Miramar Beach, FL 32550

Gerard V. Mantese
David Hansma
Brendan Frey
Mantese Honigman Rossman & Williamson, P.C.
1361 East Big Beaver Road
Troy, MI 48083

Ben F. Pierce Gore
Pratt & Associates
1871 The Alameda, Suite 425
San Jose, CA 95126

Charles Barrett
Charles Barrett, P.C.
6518 Highway 100, Suite 210
Nashville, TN 37205

Thomas P. Thrash
Thrash Law Firm, P.A.
1101 Garland Street
Little Rock, AR 72201

Armand Derfner
Derfner, Altman, & Wilborn
575 King Street, Suite B
Charleston, SC 29403

      Counsel for Appellants Martens Cars of Washington, Inc, Hudson Charleston Acquisition, LLC, d/b/a Hudson Nissan, John O'Neill Johnson Toyota, LLC, Hudson Gastonia Acquisition, LLC, HC Acquisition, LLC, d/b/a Toyota of Bristol, Desert European Motorcard, Ltd, Hodges Imported Cars, Inc., d/b/a Hodges Subaru, Scotland Car Yard Enterprises d/b/a San Rafael Mitsubishi, Hartley Buick/GMC Truck, Inc., d/b/a Hartley Honda, Panama City Automotive Group, Inc, d/b/a John Lee Nissan and Empire Nissan of Santa Rosa

Warren T. Burns    [ARGUED]

7

Daniel H. Charest
Will Thompson
E. Lawrence Vincent
Burns Charest LLP
500 North Akard, Suite 2810
Dallas, TX 75201

Hollis Salzman
Bernard Persky
Meegan Hollywood
Robins Kaplan LLP
601 Lexington Avenue, Suite 3400
New York, NY 10022

Joseph W. Cotchett
Steven N. Williams
Cotchett, Pitre & McCarthy, LLP
San Francisco Airport Office Center
840 Malcolm Road, Suite 200
Burlingame, CA 94010

James E. Cecchi
Carella, Byrne, Cecchi, Olstein, Brody & Agnello, P.C.
5 Becker Farm Road
Roseland, NJ 07068

Counsel for Appellant End Payor Plaintiffs

Eric R. Breslin
Duane Morris LLP
One Riverfront Plaza
1037 Raymond Boulevard, Suite 1800
Newark, NJ 07102

Wayne A. Mack
J. Manly Parks
Andrew Sperl
Duane Morris LLP
30 South 17th Street
Philadelphia, PA 19103

Counsel for Appellant Truck and Equipment Dealer Plaintiffs

John R. Fornaciari
Robert M. Disch
Baker & Hostetler LLP
1050 Connecticut Avenue, N.W.
Suite 1100
Washington, D.C. 20036

Counsel for Appellees Nippon Yusen Kabushiki Kaisha and NYK Line North America Inc.

James L. Cooper
Anne P. Davis
Adam M. Pergament
Arnold & Porter LLP
601 Massachusetts Avenue, N.W.
Washington, D.C. 20001

Robert B. Yoshitomi
Eric C. Jeffrey
Nixon Peabody LLP
799 New York Avenue, N.W.
Washington, D.C. 20001

Counsel for Mitsui O.S.K. Lines, Ltd., Mitsui O.S.K.
Bulk Shipping (U.S.A.), LLC, World Logistics Service
(U.S.A.) Inc., and Nissan Motor Car Carrier Co., Ltd.

Mark W. Nelson      [ARGUED]
Jeremy Calsyn
Cleary Gottlieb Steen & Hamilton LLP
2000 Pennsylvania Avenue, N.W.
Washington, D.C. 20006

Counsel for Appellees Kawasaki Kisen Kaisha, Ltd.
and "K" Line America, Inc.

Roberto A. Rivera-Soto      [ARGUED]
Jason A. Leckerman
Ballard Spahr LLP
210 Lake Drive East
Suite 200
Cherry Hill, NJ 08002

Benjamin F. Holt
Hogan Lovells US LLP
555 Thirteenth Street, N.W.
Washington, D.C. 20004

Counsel for Appellees Wallenius Wilhelmsen
Logistics AS, Wallenius Wilhelmsen Logistics
America LLC, and EUKOR Car Carriers, Inc.

Steven F. Cherry
Brian C. Smith
Wilmer, Cutler, Pickering, Hale & Dorr LLP

1875 Pennsylvania Avenue, N.W.
Washington, D.C. 20006

Counsel for Appellees Compañía Sud Americana de Vapores, S.A. and CSAV Agency, LLC

Jeffrey F. Lawrence
Wayne Rohde
Cozen O'Connor PC
1200 Nineteenth Street, N.W.
Washington, D.C. 20036

Melissa H. Maxman
Cohen & Gresser LLP
1707 L Street, N.W., Suite 550
Washington, D.C. 20036

Counsel for Höegh Autoliners AS and Höegh Autoliners, Inc.

Renata B. Hesse
James J. Fredricks
Sean Sandoloski
United States Department of Justice
Antitrust Division
950 Pennsylvania Ave., N.W.
Room 3224
Washington, DC 20530

Counsel for Amicus Curiae United States of America

Tyler J. Wood
William H. Shakely

11

Joel F. Graham
Federal Maritime Commission
800 North Capitol Street, N.W.
Washington, DC 20573

       Counsel for Amicus Curiae Federal Maritime
       Commission

————————

## OPINION OF THE COURT

————————

SHWARTZ, Circuit Judge.

       Ocean common carriers transport cargo between foreign countries and the United States. In this case, Plaintiffs[1] used the services of such carriers to transport vehicles. Some plaintiffs made arrangements with and received vehicles directly from the carriers (direct purchaser plaintiffs or "DPPs"), while other plaintiffs obtained the benefit of the carrier services by ultimately receiving vehicles transported from abroad (indirect purchaser plaintiffs or "IPPs"). Plaintiffs allege that Defendants, who are ocean common carriers, entered into agreements to fix prices and reduce capacity in violation of federal antitrust laws and various state laws. Because the ocean common carriers allegedly engaged in acts prohibited by the Shipping Act of

———————

      [1] The plaintiffs fall into two categories: Direct Purchase Plaintiffs ("DPPs") and Indirect Purchase Plaintiffs ("IPPs"). The latter category consists of Auto Dealer IPPs, End-Payor IPPs, and Truck Center IPPs.

12

1984, 46 U.S.C. § 40101 et seq. (the "Shipping Act" or the "Act"), and the Act both precludes private plaintiffs from seeking relief under the federal antitrust laws for such conduct and preempts the state law claims under circumstances like those presented here, the District Court correctly dismissed the complaints. We will therefore affirm.

I[2]

Defendants transport vehicles from their country of origin to the country where they will be sold, including the United States, at which point the vehicles are delivered to dealers and individuals, such as Auto Dealer IPPs, Truck Center IPPs, and End-Payor IPPs. The vehicle manufacturers and DPPs purchase vehicle carrier services from Defendants, and the costs of these services are passed on to IPPs.

In September 2012, law enforcement raided Defendants' offices in connection with antitrust investigations, and several Defendants thereafter pleaded guilty to antitrust violations based on price-fixing, allocating customers, and rigging bids for vehicle carrier services to and from the United States and elsewhere.

Plaintiffs filed complaints with jury demands alleging that Defendants entered into "secret" agreements in connection with Defendants' carriage of vehicles. These

---

[2] Because this appeal arises from an order dismissing the complaints pursuant to Fed. R. Civ. P. 12(b)(6), the facts are derived from the complaints and are accepted as true. Connelly v. Lane Constr. Corp., 809 F.3d 780, 786 (3d Cir. 2016).

agreements included: (1) price increase coordination agreements; (2) agreements not to compete, including coordination of responses to price reduction requests and allocation of customers and routes; and (3) agreements to restrict capacity by means of agreed-upon fleet reductions. Plaintiffs claim they suffered economic injuries as a result of these agreements and seek relief under the Clayton Act for violations of the Sherman Act. IPPs also assert state antitrust, consumer fraud, and unjust enrichment claims.

Defendants moved to dismiss the complaints pursuant to Fed. R. Civ. P. 12(b)(6), claiming they are immune from antitrust liability under the Shipping Act and that the state law claims are preempted. The District Court agreed and dismissed the complaints with prejudice.

While the motions to dismiss were pending, IPPs informed the District Court that they reached a putative class action settlement in principle with two groups of defendants, "K" Line and MOL Defendants (the "Settling Defendants"), but no motions to approve any settlement were filed. After the Court dismissed the complaints, IPPs filed a motion for reconsideration under Fed. R. Civ. P. 59(e) and 60(b) and Local Civil Rule 7.1(i) alleging that, before the cases were dismissed, they had notified the Court that they agreed in principle to settle and requested that it retain jurisdiction to approve a class settlement.

The District Court denied IPPs' motion for reconsideration because it had determined that the Federal Maritime Commission ("FMC") was the appropriate forum to

hear the dispute[3] and because IPPs "did not identif[y] an intervening change in the controlling law, alert[ ] the Court to the availability of new evidence that was not available when the Court issued its Opinion, or allege[ ] that the Opinion was the result of a clear error of fact or law or will result in manifest injustice." Joint App. 62-63.

Plaintiffs appeal the order dismissing the complaints and IPPs also appeal the order denying reconsideration.[4]

---

[3] While IPPs' motion for reconsideration was pending, Plaintiffs filed complaints with the FMC.

[4] The District Court had jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1337, and we have jurisdiction pursuant to 28 U.S.C. § 1291. We exercise plenary review of a district court's order granting a motion to dismiss under Rule 12(b)(6), Burtch v. Milberg Factors, Inc., 662 F.3d 212, 220 (3d Cir. 2011), and apply the same standard as the District Court. See Santomenno ex rel. John Hancock Tr. v. John Hancock Life Ins. Co., 768 F.3d 284, 290 (3d Cir. 2014). Under this standard, we must determine whether the complaints "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)), "but we disregard rote recitals of the elements of a cause of action, legal conclusions, and mere conclusory statements." James v. City of Wilkes-Barre, 700 F.3d 675, 679 (3d Cir. 2012). Our review of the District Court's order denying IPPs' motion to reconsider is "plenary where the denial was based on the 'interpretation and application of a legal precept.' Otherwise, we review such denials for abuse of discretion." United

15

II

To resolve this appeal, we must first examine the Shipping Act of 1984. Broadly, the Shipping Act establishes a uniform federal framework for regulating entities, such as ocean common carriers,[5] and attempts to place U.S.-flag

States v. Smith, 445 F.3d 713, 716 (3d Cir. 2006) (citations omitted).

[5] Under the Shipping Act, the "term 'ocean common carrier' means a vessel-operating common carrier." 46 U.S.C. § 40102. Under the Act, a

"common carrier"—(A) means a person that— (i) holds itself out to the general public to provide transportation by water of passengers or cargo between the United States and a foreign country for compensation; (ii) assumes responsibility for the transportation from the port or point of receipt to the port or point of destination; and (iii) uses, for all or part of that transportation, a vessel operating on the high seas or the Great Lakes between a port in the United States and a port in a foreign country; but (B) does not include a carrier engaged in ocean transportation by ferry boat, ocean tramp, or chemical parcel-tanker, or by vessel when primarily engaged in the carriage of perishable agricultural commodities—(i) if the carrier and the owner of those commodities are wholly-owned, directly or indirectly, by a person primarily engaged in the marketing and distribution of those commodities; and (ii) only

16

vessels on a level economic playing field with their foreign counterparts. The Act sets forth four specific purposes:

> (1) establish a nondiscriminatory regulatory process for the common carriage of goods by water in the foreign commerce of the United States with a minimum of government intervention and regulatory costs;
> (2) provide an efficient and economic transportation system in the ocean commerce of the United States that is, insofar as possible, in harmony with, and responsive to, international shipping practices;
> (3) encourage the development of an economically sound and efficient liner fleet of vessels of the United States capable of meeting national security needs; and
> (4) promote the growth and development of United States exports through competitive and efficient ocean transportation and by placing a greater reliance on the marketplace.

46 U.S.C. § 40101. Taken together, these purposes show that the Act seeks to promote economically sound, evenhanded, and efficient ocean commerce that responds to international shipping practices. See also Waterfront Comm'n of N.Y. Harbor v. Elizabeth-Newark Shipping, Inc., 164 F.3d 177, 185 (3d Cir. 1998) ("The primary purpose of the Shipping

---

> with respect to the carriage of those commodities.

Id.

17

Act . . . is to eliminate discriminatory treatment of shippers and carriers.").

One way the Act sought to achieve these goals was to broaden the provisions of the prior law that provided very limited antitrust immunity.[6] The House Committee on Merchant Marine and Fisheries, which reported on the bill, noted "[t]he perception . . . that the threat of U.S. antitrust prosecution weighs much more heavily on U.S. operators than their foreign-flag competition" and recognized "the need to foster a regulatory environment in which U.S.-flag liner operators are not placed at a competitive disadvantage vis-a-vis their foreign-flag competitors." Report of the House Committee on Merchant Marine and Fisheries, H.R. Rep. No. 98-53(I), 98th Cong., 1st Sess., at 9, 10.[7] To address this

---

[6] The Shipping Act of 1916, 46 U.S.C. § 801 et seq., provided antitrust immunity for rate-making agreements approved by the FMC. See, e.g., Carnation Co. v. Pac. Westbound Conf., 383 U.S. 213, 216-18 & n.1 (1966) (noting that the Shipping Act of 1916 included only a limited antitrust exemption and holding that the implementation of rate-making agreements not approved by the FMC was subject to the antitrust laws); Nat'l Ass'n of Recycling Indus., Inc. v. Am. Mail Line, Ltd., 720 F.2d 618, 618 (9th Cir. 1983) (stating that the Shipping Act of 1916 immunized collective rate-making activity provided that the rate-making was authorized by agreements which the FMC approved and all rates were filed with the FMC).

[7] H.R. Rep. No. 98-53 relates to the proposed Shipping Act of 1983, S. 504, H.R. 1878, 98th Cong., 1st Sess., which was not passed but was considered by the same Congress that passed the Shipping Act of 1984. The proposed Shipping Act

18

disadvantage, the Shipping Act "exempt[ed] from the antitrust laws those agreements and activities subject to regulation by the" FMC. H.R. Rep. No. 98-53(I), at 3. Such agreements include those that:

> (1) discuss, fix, or regulate transportation rates, including through rates, cargo space accommodations, and other conditions of service;
> (2) pool or apportion traffic, revenues, earnings, or losses;
> (3) allot ports or regulate the number and character of voyages between ports;
> (4) regulate the volume or character of cargo or passenger traffic to be carried;
> (5) engage in an exclusive, preferential, or cooperative working arrangement between themselves or with a marine terminal operator;
> (6) control, regulate, or prevent competition in international ocean transportation; or
> (7) discuss and agree on any matter related to a service contract.

Id. § 40301.

The Act provides federal antitrust immunity for agreements filed with the FMC that address these topics.[8]

_____

of 1983 is the same in all relevant respects as the Shipping Act of 1984.

[8] 46 U.S.C. § 40302 provides that a "true copy of every agreement referred to in section 40301(1) or (b) of this title shall be filed with the [FMC]. If the agreement is oral, a

The FMC reviews each filed agreement and can seek information about it. 46 U.S.C. § 40304. If the FMC takes no action on such an agreement, that agreement becomes effective,[9] and, pursuant to § 40307(a), the federal antitrust laws, such as the Sherman Act and the Clayton Act, "do not apply to [such] an agreement." 46 U.S.C. §§ 40102, 40307(a). Thus, activities described in § 40301 that are undertaken pursuant to agreements filed with the FMC are immune from federal antitrust laws.

The Act also provides immunity from private antitrust suits based on conduct prohibited by the Act. For example, the Act prohibits conduct undertaken pursuant to agreements

---

complete memorandum specifying in detail the substance of the agreement shall be filed."

[9] Under the Shipping Act, an agreement is effective:

(1) on the 45th day after filing, or on the 30th day after notice of the filing is published in the Federal Register, whichever is later; or
(2) if additional information or documents are requested under subsection (d)—(A) on the 45th day after the Commission receives all the additional information and documents; or (B) if the request is not fully complied with, on the 45th day after the Commission receives the information and documents submitted and a statement of the reasons for noncompliance with the request.

46 U.S.C. § 40304.

20

that are not effective or have been rejected. Specifically, § 41102(b) provides:

> Operating contrary to agreement.—A person may not operate under an agreement required to be filed under section 40302 or 40305 of this title if—
> (1) the agreement has not become effective under section 40304 of this title or has been rejected, disapproved, or canceled; or
> (2) the operation is not in accordance with the terms of the agreement or any modifications to the agreement made by the Federal Maritime Commission.

46 U.S.C. § 41102(b). If an agreement has not been filed, it cannot become effective and thus operating under such an unfiled agreement is prohibited. See 46 C.F.R. § 535.901 ("Any person operating under an agreement . . . that has not been filed and that has not become effective pursuant to the Act . . . is in violation of the Act . . . ."). A party injured by activities occurring under such an unfiled, and hence not effective, agreement may not obtain Clayton Act relief. Id. § 40307(d) (stating that "[a] person may not recover damages under section 4 of the Clayton Act (15 U.S.C. 15), or obtain injunctive relief under section 16 of that Act (15 U.S.C. 26), for conduct prohibited by" the Shipping Act); see also H.R. Rep. No. 98-53(I), at 12 ("The antitrust exposure for these so-called 'secret' agreements is limited to injunctive and criminal prosecution by the Attorney General, and does not carry with it any private right of action otherwise available under the antitrust laws.").

Although the Act bars private federal antitrust lawsuits based on such prohibited conduct, it does provide an avenue for relief before the FMC. A & E Pac. Constr. Co. v. Saipan Stevedore Co., 888 F.2d 68, 71 (9th Cir. 1989). Either on a complaint filed by a private party, 46 U.S.C. § 41301(a), or its own motion, the FMC may investigate alleged violations of the Shipping Act, id. § 41302. In such proceedings, the parties may engage in discovery, id. § 41303, and request hearings before the FMC, id. § 41304. If a plaintiff shows the Act has been violated, the FMC may assess penalties, id. § 41109(a), award damages of up to double the amount of the actual injury, grant attorneys' fees, id. § 41305, and provide a means to obtain equitable relief, id. § 41307.[10] A & E Pac. Constr. Co., 888 F.2d at 71 (noting that "while no private party may sue for damages or for injunctive relief under the antitrust laws for conduct falling within the purview of the [Shipping] Act, the FMC is empowered to order reparations, including double damages, to impose sanctions and penalties for prohibited conduct, and to file suit in federal district court against the offending party" (citations omitted)); see also Fed. Mar. Comm'n v. S.C. State Ports Auth., 535 U.S. 743, 759 (2002) ("[T]he similarities between FMC proceedings and civil litigation are overwhelming."). Congress gave the FMC this broad authority to, among other things, "provide a deterrent effect which has previously been available only by invoking the antitrust laws," H.R. Rep. No. 98-53(I), at 4, and "end the uncertainty and delay that surrounds U.S. Government regulation of ocean liner shipping, by providing

---

[10] After filing a complaint, a private party may also file a complaint in a district court for injunctive relief, id. § 41306, and seek enforcement of FMC orders in a district court, id. § 41309.

a predictable legal regime and streamlined regulatory process administered and enforced by a single independent Federal agency (the [FMC]) to better serve the needs of U.S. foreign commerce," Report of the Senate Committee on Commerce, Science, and Transportation, S. Rep. No. 98-3, 98th Cong., 1st Sess. at 1.[11]  See also H.R. Rep. No. 98-53(I), at 12 ("[T]he remedies and sanctions provided in the Shipping Act . . . will be the exclusive remedies and sanctions for violation of the Act."); Seawinds Ltd. v. Nedlloyd Lines, B.V., 80 B.R. 181, 184, 185 (N.D. Cal. 1987) (stating that, "[b]y removing the courts from this regulatory process, Congress removed the potential for continuing regulatory uncertainty" under the antitrust laws), aff'd, 846 F.2d 586 (9th Cir. 1988).

Thus, the Shipping Act's text, scheme, and legislative history demonstrate Congress's intent to create a comprehensive, predictable federal framework to ensure efficient and nondiscriminatory international shipping practices.

### III

Mindful of this framework, we will first address whether the Shipping Act bars Plaintiffs' Clayton Act claims. There is no dispute that operating under unfiled price fixing and/or market allocation agreements is prohibited under §§ 40301 and 40302 of the Shipping Act.

---

[11] Like H. Rep. 98-53 discussed above, supra note 7, S. Rep. No. 98-3 relates to the proposed but not passed Shipping Act of 1983, which is the same as the Shipping Act of 1984 in all relevant respects.

Plaintiffs assert, however, that the Shipping Act does not prohibit a carrier from operating under unfiled agreements to restrict capacity. For support, they point to a statement by an FMC Commissioner made at a trade symposium during which he said that agreements to restrict capacity "would be outside of the Shipping Act purview." DPP Appellants' Br. 24. Plaintiffs assert that we should treat this comment as the agency's interpretation of a statute it administers. This argument fails for several reasons. First, the Commissioner stated that "[m]y remarks today reflect my personal views and thoughts and are not offered as the official position of the United States or the Federal Maritime Commission." Joint App. 39-40. Second, and relatedly, Chevron deference only applies to agency action, and by his own statements the Commissioner acknowledged that he was not speaking or acting for the agency. Thus, Chevron deference is not applicable. See Chevron U.S.A. Inc. v. Nat. Res. Def. Council, Inc., 467 U.S. 837 (1984); Br. for Fed. Mar. Comm'n and United States as Amici Curiae 16 n.22.

Moreover, the Commissioner's statement is undermined by the Act itself. Sections 40301(a)(3) and (4) require parties to file agreements that restrict capacity. For example, § 40301(a)(4) requires carriers to file agreements that "regulate the volume or character of cargo or passenger traffic to be carried." Relatedly, § 40301(a)(3) requires carriers to file agreements that "regulate the number and character of voyages between ports." Entering agreements concerning these activities without filing them is prohibited.

Plaintiffs allege they were injured by acts taken pursuant to these unfiled, and thus prohibited, agreements and seek damages under the Clayton Act. The Shipping Act,

24

however, bars them from obtaining Clayton Act relief. <u>Id.</u> § 40307(d); <u>see</u> <u>Seawinds</u>, 80 B.R. at 183 ("The Shipping Act of 1984 expressly bars private antitrust suits based on conduct prohibited by the Act."). As explained above, the Shipping Act specifically provides that operating under an unfiled, and hence ineffective, agreement is a prohibited act, <u>id.</u> § 41102(b), and those injured by such a prohibited act cannot obtain Clayton Act relief, <u>id.</u> § 40307(d).

Plaintiffs nonetheless argue that Clayton Act immunity set forth in § 40307(a) must be read in light of § 40307(d) and suggest that the two provisions cover the same subjects. They are mistaken. In § 40307(a), Congress granted immunity from antitrust prosecution for conduct permitted by the Shipping Act, while in § 40307(d) Congress provided immunity from private Clayton Act liability for conduct prohibited by the Shipping Act. Plaintiffs' reading destroys this carefully drawn delineation.

For all of these reasons, Plaintiffs cannot obtain Clayton Act relief, and the District Court correctly dismissed Plaintiffs' Clayton Act claims.[12]

---

[12] Plaintiffs alternatively argue that the complaints should not be dismissed with respect to contracts for the shipping of "new[ly] assembled motor vehicles." 46 U.S.C. § 40502. They raised this argument for the first time during oral argument before the District Court, and when the District Court confronted them with the fact that this was a new argument, they agreed not to "make those arguments." Defs. App. 141. Despite this statement, Plaintiffs argue that they did not waive the argument because it is currently pending before the District Court in a different case. Raising the

IV

We next examine whether the District Court correctly concluded that IPPs' state law antitrust, consumer protection, and unjust enrichment claims are preempted.

A

The preemption doctrine is based on the Supremacy Clause, which provides that "the Laws of the United States . . . shall be the supreme Law of the Land . . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2. Congress thus

argument in another case does not cure their failure to raise the argument here, and this failure waives the argument. Brenner v. Local 514, United Bhd. of Carpenters & Joiners of Am., 927 F.2d 1283, 1298 (3d Cir. 1991).

Even if the argument were not waived, it would not change the outcome. Section 40502 provides that the requirement to file a service contract with the FMC does not apply to contracts regarding "new[ly] assembled motor vehicles." 46 U.S.C. § 40502(b) ("Each service contract entered into under this section by an individual ocean common carrier or an agreement shall be filed confidentially with the Federal Maritime Commission. . . . [This provision] does not apply to contracts regarding . . . new assembled motor vehicles."). This exemption from filing service contracts for newly assembled motor vehicles, however, does not relieve Defendants from their obligation to file the other agreements referred to in § 40301(a) or (b) with the FMC.

26

has the power to preempt state law.  Arizona v. United States, 132 S. Ct. 2492, 2500 (2012) (citation omitted).

Preemption is an affirmative defense, In re Asbestos Prods. Liab. Litig. (No. VI), 822 F.3d 125, 133 n.6 (3d Cir. 2016), and so we examine only the defense asserted before us, see Oneok, Inc. v. Learjet, Inc., 135 S. Ct. 1591, 1595, 1602 (2015).  Defendants argue that IPPs' state law claims are subject to conflict preemption.[13]  There are two types of conflict preemption: (1) where "compliance with both federal and state duties is simply impossible," and (2) where "compliance with both laws is possible, yet state law poses an obstacle to the full achievement of federal purposes."  MD Mall Assocs. v. CSX Transp., Inc., 715 F.3d 479, 495 (3d Cir. 2013).  Defendants rely on "obstacle" conflict preemption.  Thus, we will examine whether IPPs' state law claims pose an obstacle to achieving Congress's goals under the Shipping Act.

B

1

We recognize that "all preemption cases 'start with the assumption that the historic police powers of the States were not to be superseded by [a] [f]ederal [a]ct unless that was the

---

[13] Although the Shipping Act contains no express preemption clause or savings clause, that does not "'bar[ ] the ordinary working of conflict pre-emption principles.'" Buckman Co. v. Plaintiffs' Legal Comm., 531 U.S. 341, 352 (2001) (quoting Geier v. Am. Honda Motor Co., 529 U.S. 861, 869 (2000)).

27

clear and manifest purpose of Congress.'" Sikkelee v. Precision Airmotive Corp., 822 F.3d 680, 687 (3d Cir. 2016) (quoting Wyeth v. Levine, 555 U.S. 555, 565 (2009)), cert. denied sub nom. Avco Corp. v. Sikkelee, --- S. Ct. ----, 2016 WL 4944476 (Nov. 28, 2016).[14]  From this assumption, we presume claims based on laws embodying state police powers are not preempted.  This "presumption against preemption," however, does not apply here because our case concerns the regulation of international maritime commerce, an area uniquely in the federal domain.  United States v. Locke, 529 U.S. 89, 108 (2000) ("The state laws now in question bear upon national and international maritime commerce, and in this area there is no beginning assumption that concurrent regulation by the State is a valid exercise of its police powers."); see also Farina v. Nokia Inc., 625 F.3d 97, 116 (3d Cir. 2010) ("The presumption applies with particular force in fields within the police powers of the state, but does not apply where state regulation has traditionally been absent." (citation omitted)).[15]

---

[14] This assumption is invoked "because respect for the States as 'independent sovereigns in our federal system' leads us to assume that 'Congress does not cavalierly pre-empt state-law causes of action.'"  Wyeth, 555 U.S. at 565 n.3 (quoting Medtronic, Inc. v. Lohr, 518 U.S. 470, 485 (1996)).

[15] Even if the presumption did apply, the text, purposes, scheme, and legislative history of the Shipping Act embody a "clear and manifest" congressional intention to preempt the state laws in question.  See Farina, 625 F.3d at 117 (citation omitted).

As there is no presumption against preemption in this case dealing with maritime conduct, we will determine whether the Shipping Act preempts IPPs' state law claims. This requires us to consider Congress's intent. Mabey Bridge & Shore, Inc. v. Schoch, 666 F.3d 862, 868 (3d Cir. 2012); see also Wyeth, 555 U.S. at 565. To do so, we consider the language, structure, and purpose of the statute, as well as legislative history where appropriate. See Sikkelee, 822 F.3d at 687; Bruesewitz v. Wyeth, Inc., 561 F.3d 233, 243-44 (3d Cir. 2009).

As noted previously, one purpose of the Act is to "establish a nondiscriminatory regulatory process for the common carriage of goods by water in the foreign commerce of the United States with a minimum of government intervention and regulatory costs." 46 U.S.C. § 40101(1). A second purpose is to ensure that U.S.-flag ships are on a level playing field with foreign vessels. See, e.g., id. § 40101(2) (stating that a purpose of the Act is to provide an efficient system of ocean transportation that is "in harmony with, and responsive to, international shipping practices").

To those ends, the Act granted ocean common carriers certain antitrust immunities. Section 40307(a) expressly immunizes agreements filed with the FMC from the federal criminal and civil antitrust laws, and § 40307(d) bars recovery of damages and injunctions under the Clayton Act for conduct prohibited by the Act. Through these provisions, Congress sought to limit the application of the antitrust laws to enable U.S.-flag carriers to compete against their foreign counterparts who may not be subject to similar restrictions.

See H.R. Rep. No. 98-53(I), at 9, 10 (noting "[t]he perception . . . that the threat of U.S. antitrust prosecution weighs much more heavily on U.S. operators than their foreign-flag competition" and recognizing a "need to foster a regulatory environment in which U.S.-flag liner operators are not placed at a competitive disadvantage vis-a-vis their foreign-flag competitors"); S. Rep. No. 98-3, at 7 (noting trading partners' "blocking statutes" and stating that "[c]lear antitrust immunity . . . marks a major step in revitalizing our maritime industry because it removes a major handicap created by uneven enforcement"); see also S. Rep. No. 98-3, at 1 (recommending the bill "in order to . . . harmonize U.S. shipping practices with those of our major trading partners, especially by reaffirming antitrust immunity for certain carrier and conference activities"). To allow state antitrust claims to proceed would interfere with this goal. See Am. Ass'n of Cruise Passengers, Inc. v. Carnival Cruise Lines, Inc., 911 F.2d 786, 792 (D.C. Cir. 1990) ("Congress was concerned about a carrier being subject to 'parallel jurisdiction,' i.e., remedies and sanctions for the same conduct made unlawful by both the Shipping Act and the antitrust laws." (emphasis and citation omitted)); H.R. Rep. No. 98-53(I), at 12 (reflecting Congress's intent "that violations of this Act not result in the creation of parallel jurisdiction over persons or matters which are subject to the Shipping Act"). Put simply, to subject the carriers to potential state antitrust liability would essentially undo Congress's work in expanding antitrust immunity and undermine its efforts to assist U.S.-flag ships avoid a competitive disadvantage. See H.R. Rep. No. 98-53(I), at 25 (noting that the Act would meet the objective to keep ocean liners "free of . . . threatened penalties under changing

interpretations of the antitrust laws"). Thus, we hold that the Shipping Act preempts IPPs' state law antitrust claims.

IPPs' consumer protection and unjust enrichment claims are also preempted. While these state laws reflect the exercise of traditional police powers, applying them here would allow the States to impose rules in an area Congress has historically regulated: maritime commerce. Locke, 529 U.S. at 108. It would also thwart Congress's goal of ensuring uniform regulation of ocean common carriers' business practices.[16] See 46 U.S.C. § 40101(1)-(2); Report of the Senate Committee on Commerce, Science, and Transportation, S. Rep. No. 98-3, 98th Cong., 1st Sess. at 1 (supporting the bill to end, among other things, "the uncertainty and delay that surrounds U.S. Government regulation of ocean liner shipping, by providing a predictable legal regime and streamlined regulatory process administered and enforced by a single independent Federal agency (the [FMC])").

To achieve these goals, Congress prohibited certain activities. Among other things, the Shipping Act makes certain unfair devices unlawful, such as operating under unfiled and ineffective agreements on specific matters, id. § 41102(b), failing to establish just and reasonable regulations

---

[16] This is not to say that all conduct in which ocean common carriers engage is never subject to state law. See, e.g., Pasha Auto Warehousing, Inc. v. Phila. Reg'l Port Auth., No. CIV. A. 96-6779, 1998 WL 188848, at *6-9 (E.D. Pa. Apr. 21, 1998) (concluding that the FMC did not have exclusive or primary jurisdiction over declaratory relief action concerning lease agreements).

and practices regarding receiving, handling, storing, or delivering property, id. § 41102(c), unreasonably refusing to deal or negotiate, id. §§ 41104(10), 41105, and allocating shippers in an unauthorized manner among specific carriers who were parties to an agreement, id. § 41105.

In addition to prohibiting such acts, Congress created specific enforcement mechanisms for persons and entities injured by these illegal practices. It empowered the FMC to investigate and punish illegal conduct pursuant to a uniform regime. By granting the FMC this authority, Congress has put in place a regulator familiar with complex foreign commerce issues confronting ocean common carriers. This expertise enables the FMC to make informed decisions about whether conduct violates the Act and warrants punishment.[17] See Farina, 625 F.3d at 126; 46 U.S.C. §§ 41109, 41305.

---

[17] At least where the subject matter is technical and the history and background are complex and extensive, we give some deference to an agency's explanation of how state law affects the federal scheme. See Farina, 625 F.3d at 126-27. The weight accorded to "the agency's explanation of state law's impact on the federal scheme depends on its thoroughness, consistency, and pervasiveness." Wyeth, 555 U.S. at 577 (citing United States v. Mead Corp., 533 U.S. 218, 234-35 (2001), and Skidmore v. Swift & Co., 323 U.S. 134, 140 (1944)). Here, the FMC and United States, as amici, assert that IPPs' state law antitrust claims are not preempted (but appear to take no position with respect to IPPs' other state law claims). We decline to defer to their views on preemption in this case. First, they discuss field preemption but, as stated above, that is not the preemption defense asserted before us. Second, to the extent amici seek to draw a

Moreover, Congress provided a means for private parties injured by the illegal acts of such carriers to seek relief ranging from double damages and attorneys' fees to injunctions. Allowing state laws to impose different standards would upset this carefully crafted scheme.[18] See

distinction between filed and unfiled agreements, we need not address that distinction because only unfiled agreements are at issue here. Finally, the FMC's and United States' position on conflict preemption is not "persuasive[ ]." See Wyeth, 555 U.S. at 577. We recognize, as they assert, that the Shipping Act and its legislative history are silent regarding state law claims. However, the position that the Shipping Act contemplates state law antitrust enforcement is inconsistent with the conclusion that the Shipping Act bars Clayton Act claims (with which amici agree); it also overlooks the purposes of the Act as set forth in the statute and legislative history as well as the comprehensive scheme for enforcement of Shipping Act violations before the FMC.

[18] We have observed that situations in which the federal government "is required to strike a balance between competing statutory objectives lend themselves to a finding of conflict preemption." Farina, 625 F.3d at 123; see also Buckman, 531 U.S. at 348 ("The conflict stems from the fact that the federal statutory scheme amply empowers the FDA to punish and deter fraud against the [FDA], and that this authority is used by the [FDA] to achieve a somewhat delicate balance of statutory objectives. The balance sought by the [FDA] can be skewed by allowing fraud-on-the-FDA claims under state tort law."); City of Burbank v. Lockheed Air Terminal Inc., 411 U.S. 624, 638-39 (1973) ("The Federal Aviation Act requires a delicate balance between safety and efficiency, and the protection of persons on the ground. . . .

33

<u>Farina</u>, 625 F.3d at 123 ("Allowing state law to impose a different standard permits a re-balancing of those considerations."); <u>cf.</u> <u>Buckman Co. v. Plaintiff's Legal Comm.</u>, 531 U.S. 341, 348 (2001) ("The balance sought by the Administration can be skewed by allowing fraud-on-the-FDA claims under state tort law."). Further, allowing juries to decide liability, as IPPs seek, would conflict with the scheme that vests the FMC with decision-making power. <u>See</u> <u>Farina</u>, 625 F.3d at 125 ("Allowing juries to impose liability on cell phone companies for claims like Farina's would conflict with the FCC's regulations."). For these reasons, permitting IPPs to pursue their state law claims that Defendants allegedly had secret agreements to coordinate price increases, not to compete, and to restrict capacity would interfere with Congress's goal of uniform regulation of common carriers' international maritime activity. <u>See</u> 46 U.S.C. § 40101(1)-(2).

Accordingly, we hold that the Shipping Act preempts IPPs' state law consumer protection and unjust enrichment claims because allowing them to proceed would pose an obstacle to achieving Congress's objectives in passing the Act.

_____

The interdependence of these factors requires a uniform and exclusive system of federal regulation if the congressional objectives underlying the Federal Aviation Act are to be fulfilled." (citation omitted)). This case presents such a situation.

34

V

IPPs' challenge to the District Court's order denying their request that it reconsider the dismissal order also fails. A judgment may be altered under Rule 59(e) if the party seeking reconsideration shows at least one of the following: "(1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court granted the motion . . . ; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." Howard Hess Dental Labs. Inc. v. Dentsply Int'l, Inc., 602 F.3d 237, 251 (3d Cir. 2010) (citation and internal quotation marks omitted). Similarly, Rule 60(b) provides, in relevant part, relief from a judgment for: (1) "mistake, inadvertence, surprise, or excusable neglect," Fed. R. Civ. P. 60(b)(1); (2) a "judgment [that] is void," Fed. R. Civ. P. 60(b)(4); or (3) "any other reason that justifies relief," Fed. R. Civ. P. 60(b)(6).

IPPs asked the District Court to reconsider its dismissal order and "retain jurisdiction over claims asserted against K Line and MOL [Defendants] for the limited purpose" of approving class action settlements. Joint App. 60. However, IPPs did not submit a motion for preliminary and final approval of any settlement or a motion to stay the matter before the District Court dismissed Plaintiffs' claims. Furthermore, IPPs did not identify an intervening change in the controlling law, present new evidence, allege that the District Court's opinion was the result of a clear error of fact or law, or point to any extraordinary circumstance that would warrant granting relief. Because IPPs failed to meet any of the grounds for reconsideration, the District Court did not

35

abuse its discretion in denying their motions for reconsideration.[19]

## VI

For the foregoing reasons, we will affirm.

---

[19] IPPs argue that the District Court "erred in concluding that it lacked subject matter jurisdiction to effectuate settlements with the two largest defendants." IPP Appellants' Br. 44. The Court did not deny IPPs' motions for reconsideration on the basis of a lack of subject matter jurisdiction. Indeed, it was aware that it possessed subject matter jurisdiction over the dispute and exercised its discretion not to entertain the request to approve the settlements because it had determined that the FMC provided a forum to resolve Plaintiffs' dispute.