**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 19-1675
_____

RYAN KERWIN,
Appellant

v.

PARX CASINO; GREENWOOD GAMING & ENTERTAINMENT LLC; HELMUT
PERZI; JOHN/JANE DOE EMPLOYEES/OWNERS OF PARX CASINO;
SUGARHOUSE CASINO; SUGARHOUSE HSP GAMING LP; SUGARHOUSE HSP
GAMING PROP MEZZ LP; RUSH STREET GAMING LLC; LINDA POWERS;
JULIA SPIELER; ERIKA JOY ERB; JULES VORNDRAN; JOHN/JANE DOE
EMPOYEES/OWNERS OF SUGARHOUSE CASINO; SANDS CASINO; SANDS
BETHWORKS GAMING LLC; JAMES HINES; JOHN/JANE DOE
EMPLOYEES/OWNERS OF SANDS CASINO; SANDS BETHLEHEM EVENT
CENTER; JOHN/JANE DOE EMPLOYEES/OWNERS OF SANDS EVENT CENTER;
SMG WORLDWIDE ENTERTAINMENT & CONVENTION VENUE
MANAGEMENT; JOHN/JANE DOE EMPLOYEES/OWNERS OF SMG
WORLDWIDE ENTERTAINMENT & CONVENTION VENUE MANAGEMENT

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil Action No. 5:17-cv-05582)
District Judge:  Honorable Jeffrey L. Schmehl

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
March 13, 2020
Before:  KRAUSE, MATEY and COWEN, <u>Circuit</u> <u>Judges</u>

(Opinion filed: March 18, 2020)

_____

OPINION[*]

_____

PER CURIAM

Ryan Kerwin, proceeding pro se, appeals the order of the United States District Court for the Eastern District of Pennsylvania granting the defendants' motions to dismiss his amended antitrust complaint. For the reasons that follow, we will affirm.

As we write solely for the benefit of the parties, we set forth briefly only those facts necessary to our analysis. Kerwin owns Xtreme Caged Combat (XCC), a mixed martial arts (MMA) promotion company. In 2017, he filed a complaint, which he later amended, against Parx Casino, Sugarhouse Casino, Sands Casino, and several of their employees, alleging that they conspired to prevent him from promoting MMA events at their facilities. In particular, in Count One, Kerwin asserted that the defendants engaged in a horizontal group boycott "as punishment for filing [a prior] antitrust suit against Harrah's and Valley Forge Casino[s]." In Count Two, Kerwin claimed that the named casinos violated the essential facilities doctrine.

The defendants filed motions to dismiss, which the District Court granted. The District Court concluded that Kerwin failed to state a horizontal group boycott claim because the amended complaint did not "allege any evidence of a conspiracy that supports an inference of collusion." In addition, Kerwin failed to state a claim under the essential

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

facilities doctrine, the District Court held, because Kerwin's "own allegations" demonstrated that he "has access to alternative venues such as the National Guard Armory, hotels, arenas and other venues to promote his MMA events." Kerwin timely appealed.

We have appellate jurisdiction under 28 U.S.C. § 1291. We exercise plenary review over the order granting the defendants' motions to dismiss. In re Vehicle Carrier Servs. Antitrust Litig., 846 F.3d 71, 79 n.4 (3d Cir. 2017). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting and citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556, 570 (2007)). It is inappropriate to apply the "plausibility standard with extra bite in antitrust … cases." W. Penn Allegheny Health Sys., Inc. v. UPMC, 627 F.3d 85, 98 (3d Cir. 2010).

"Liability under § 1 of the Sherman Act, 15 U.S.C. § 1, requires a 'contract, combination …, or conspiracy, in restraint of trade or commerce.'" Twombly, 550 U.S. at 548. Indeed, "[t]he existence of an agreement is the hallmark of a Section 1 claim." In re Baby Food Antitrust Litig., 166 F.3d 112, 117 (3d Cir. 1999). Therefore, an antitrust complaint must allege "some form of concerted action, … in other words, a unity of purpose or a common design and understanding or a meeting of minds or a conscious commitment to a common scheme." In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 315 (3d Cir. 2010) (citations and internal quotation marks omitted). To adequately plead plausible concerted action, a plaintiff must allege either direct or circumstantial evidence

3

of an agreement. Burtch v. Milberg Factors, Inc., 662 F.3d 212, 225 (3d Cir. 2011). "[R]egardless of whether the plaintiff expects to prove the existence of a conspiracy directly or circumstantially, it must plead 'enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal agreement.'" Ins. Brokerage Antitrust Litig., 618 F.3d at 324 (quoting Twombly, 550 U.S. at 556).

We agree that the allegations in Kerwin's amended complaint failed to plead direct evidence of an agreement. Kerwin made only a vague conspiracy allegation, claiming that "[a]ll of the Pennsylvania Casinos, acting in concert with one another, are now boycotting plaintiff from being able to promote his mixed martial arts events at all of their casinos …." Notably, he did not allege any facts suggesting that the defendants engaged in "some form of 'concerted action.'" Baby Food Antitrust Litig., 166 F.3d at 117. Kerwin did not even claim that the defendant casinos and their employees had an opportunity to conspire, much less that they had actual contact or communication with one another. See Burtch, 662 F.3d at 225 (holding that direct evidence of a conspiracy was lacking where the complaint's allegations did not "specify a time or place that any actual agreement to fix credit terms occurred, [or] …indicate that any particular individuals or [organizations] made such an agreement"). In short, Kerwin's amended complaint fell well short of pleading facts suggestive of an unlawful agreement. See Twombly, 550 U.S. at 557 (stating that "a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality").

The amended complaint also failed to allege circumstantial evidence plausibly supporting the inference that an agreement existed. According to Kerwin, the casinos'

4

refusal to do business with him demonstrated the requisite concerted action. But, "[w]ithout more, parallel conduct does not suggest conspiracy …." Twombly, 550 U.S. at 556-57. As the Supreme Court has explained, "when allegations of parallel conduct are set out in order to make a § 1 claim, they must be placed in a context that raises a suggestion of a preceding agreement, not merely parallel conduct that could just as well be independent action." Id. at 557; Ins. Brokerage Antitrust Litig., 618 F.3d at 321 (stating that "evidence of parallel conduct by alleged co-conspirators is not sufficient to show an agreement"). Thus, "[t]o move the ball across the goal line, a plaintiff must also show that certain plus factors are present." In re Chocolate Confectionary Antitrust Litig., 801 F.3d 383, 398 (3d Cir. 2015). "Although we have not identified an exhaustive list of plus factors, they may include (1) evidence that the defendant had a motive to enter into a price fixing conspiracy; (2) evidence that the defendant acted contrary to its interests; and (3) evidence implying a traditional conspiracy." Id.

Here, as explained below, "common economic experience, [and] the facts alleged in the complaint itself, show that independent self-interest is an obvious alternative explanation for defendants' common behavior." Ins. Brokerage Antitrust Litig., 618 F.3d at 326 (internal quotation marks omitted). Indeed, as Kerwin's own allegations make clear, the defendant casinos simply made independent business decisions not to work with him in promoting MMA events. Kerwin emphasized that the Director of Marketing at Sugarhouse Casino sent him an email stating, "Sugarhouse is never going to let you in here. If it wasn't for you, we would have had MMA events here long ago. You filed that lawsuit, now live with it." This statement, which Kerwin concedes was made in response to his

5

earlier email threatening to sue, demonstrates only that Sugarhouse Casino made a unilateral decision not to do business with a potentially litigious individual. Kerwin also asserted that a Parx Casino employee engaged in a dialogue with him about hosting MMA, but ultimately informed him that the casino planned to work with another promoter. In communicating with Kerwin, the Parx Casino employee explained that he found one of Kerwin's emails to be "unprofessional," and later noted that, "[a]ll of our decisions are not always about the best financials, but with whom we are comfortable working with and we find synergy with to be successful together." This allegation shows that Parx Casino made an individual decision to not work with someone with whom it lacked "synergy." Kerwin further claimed that Sands Casino plotted to allow him to promote one event at their facility in the hope that he would fail. This too, however, demonstrates only unilateral action. Notably, Kerwin admits that, even after he filed his initial antitrust lawsuit against Harrah's and Valley Forge Casinos, Sands Casino permitted him to promote two MMA events and offered him an opportunity to host another event. Kerwin stated that he declined that opportunity because he did not like the terms offered, and he alleged that other MMA promoters have also refused to agree to Sands Casino's "inflated terms." That Sands Casino allowed Kerwin to promote two events during the alleged boycott undermines his assertion that the casino was involved in a conspiracy. In sum, we agree that Kerwin failed to plead evidence of an agreement between the defendants to boycott his promotion company. See Edward J. Sweeney & Sons, Inc. v. Texaco, Inc., 637 F.2d 105, 111 (3d Cir. 1980) (stating that "the existence of concerted action" requires allegations that the

6

defendants "had a conscious commitment to a common scheme designed to achieve an unlawful objective").

Kerwin also failed to state a claim under § 2 of the Sherman Act, 15 U.S.C. § 2, for a violation of the essential facilities doctrine. That doctrine "imposes liability when one firm, which controls an essential facility, denies a second firm reasonable access to a product or service that the second firm must obtain in order to compete with the first." Alaska Airlines, Inc. v. United Airlines, Inc., 948 F.2d 536, 542 (9th Cir. 1991). To establish an essential facilities claim, a plaintiff must show: "(1) control of the essential facility by a monopolist; (2) the competitor's inability practically or reasonably to duplicate the essential facility; (3) denial of the use of the facility to a competitor; and (4) the feasibility of providing the facility." Ideal Dairy Farms, Inc. v. John Labatt, Ltd., 90 F.3d 737, 748 (3d Cir. 1996). Kerwin cannot pursue an essential facilities claim for at least two reasons. First, he is not a competitor of the defendant casinos. Rather, Kerwin sought to promote MMA events at venues operated by those casinos. See Garshman v. Universal Res. Holding Inc., 824 F.2d 223, 230 (3d Cir. 1987) (rejecting essential facilities claim because natural gas producer was not a competitor of a public utility holding company and a gas pipeline owner); see also Thomas v. Network Sols., Inc., 176 F.3d 500, 509 (D.C. Cir. 1999) (affirming dismissal of essential facilities claim because plaintiffs were not competitors of defendants). Second, Kerwin has been able to hold MMA events at other facilities. In the amended complaint, Kerwin alleged that in over eight years of existence, XCC had held 29 events in the Philadelphia region, including 16 at the National Guard Armory. Because it is feasible for Kerwin and XCC to do business at other venues, it

7

cannot be said that the any of the defendant casinos' facilities are "essential." <u>See</u> <u>MetroNet Servs. Corp. v. Qwest Corp.</u>, 383 F.3d 1124, 1129-30 (9th Cir. 2004) (stating that a facility is essential only if it is otherwise unavailable and cannot be reasonably or practically replicated); <u>Twin Labs., Inc. v. Weider Health & Fitness</u>, 900 F.2d 566, 570 (2d Cir. 1990) (holding that an essential facility claim must allege "more than inconvenience, or even some economic loss"); <u>Flip Side Prods., Inc. v. Jam Prods., Ltd.</u>, 843 F.2d 1024, 1034 (7th Cir. 1988) (concluding that venue was not "an essential facility for the promotion of arena-level concerts in the Chicago metro area" where plaintiff admitted that undisputed facts showed availability of other arena-level facilities). Accordingly, we agree that Kerwin has failed to state an essential facilities claim.

For the foregoing reasons, we will affirm the District Court's judgment.