**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 17-1413
_____

MARY ANN ANDREWS;
WARREN ANDREWS,
                                        Appellants

v.

MERCHANTS MUTUAL INSURANCE COMPANY
(As Part Of) Merchants Insurance Group
_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
(D.C. No. 1-14-cv-05147)
District Judge: Hon. Joseph H. Rodriguez
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
November 17, 2017
_____

Before: VANASKIE, SHWARTZ, and FUENTES, Circuit Judges.

(Filed: January 10, 2018)

_____

OPINION[*]
_____

SHWARTZ, Circuit Judge.

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Plaintiffs Warren and MaryAnn Andrews appeal the District Court's order denying their motion to reconsider the order granting summary judgment to Defendant Merchants Mutual Insurance Company ("Merchants"). Plaintiffs claim that Merchants breached its contract—a homeowners insurance policy—with Plaintiffs and its duty to act in good faith concerning damage to their home from a severe storm and Hurricane Sandy. Because the District Court did not err in denying reconsideration of its summary judgment order, we will affirm.

## I

## A

Merchants issued a homeowners policy (the "Policy") to Plaintiffs for their home in Linwood, New Jersey. The Policy limited coverage for mold-related damage to $10,000. In addition, the Policy did not cover "Water Damage," which meant that Merchants would not pay for damage caused by, among other things, "[w]ater below the surface of the ground, including water which exerts pressure on, or seeps, leaks, or flows through a building, . . . foundation, . . . or other structure." App. at 46.

On June 29, 2012, a severe storm hit the area in which Plaintiffs lived. On July 30, 2012, Plaintiffs filed a Property Loss Notice with Merchants for water damage, claiming a leak in the master bathroom. Plaintiffs learned that water was leaking through the roof and that several shingles were missing from around the area above the bathroom. The roofing company told Plaintiffs that the roof had sustained damage from the storm

and provided an estimate for both repairing the roof, for $695.50, and replacing the roof, for $15,400.

Merchants's adjuster, Tri-State Adjusters ("Tri-State"), inspected Plaintiffs' property on August 21, 2012. Plaintiffs told Tri-State that the damage to their bathroom was due to shingles being blown off the roof during the storm. Tri-State requested the roofer's invoice. In a letter to Merchants, Tri-State recommended paying for the roof repair, but stated that replacing the entire roof was "excessive." App. at 60. Tri-State ultimately recommended that Merchants pay Plaintiffs $6,457.06 for damages to their home, which included reimbursement for the roof repairs and Merchants paid Plaintiffs that amount.

While Plaintiffs and Merchants were addressing the storm-related claim, Hurricane Sandy made landfall. The crawl space located beneath Plaintiffs' house flooded. Warren Andrews explained that the water "came up from . . . the sand," and when asked, "The subsurface water, the water table rose, right?" he replied, "Right." App. at 228.

Shortly before Sandy hit, Plaintiffs noticed mold in the master bathroom and a closet, which were both under the area of the roof where the shingles were missing. After Sandy, and realizing that they had mold problems, Plaintiffs engaged Quality Air Care ("Quality") to test for mold throughout the house. The results showed that the greatest concentration of mold was in the crawl space, which contained approximately 50 to 400 times more mold per cubic meter than other tested areas. Merchants then retained a second independent adjuster, McBrearty & Associates ("McBrearty"), to evaluate

Plaintiffs' home. One of McBrearty's associates and an industrial hygienist from Briggs Associates ("Briggs") inspected the home for mold. McBrearty sent Briggs's report of its mold tests to Merchants, which stated that "[t]he highest concentration of mold spores were identified in the crawl space," and that the "results provide support for the conclusion that the elevated interior fungal concentration arose from the crawl space and not the attic." App. at 116; see also App. at 124 (noting a "rare amount" of mold in the attic and the conclusion that the mold problems "arose from the crawl space and not the attic" (emphasis omitted)). The report noted that the crawl space had a sand floor with no vapor barrier. Warren Andrews, however, testified that he installed a vapor barrier years earlier but that he cut the plastic barrier into pieces and did not tape or otherwise attach them together or to anything else. McBrearty also stated that there could have been mold issues in the crawl space before Sandy, which Sandy exacerbated. McBrearty recommended remediation of the mold and an additional payment for Plaintiffs' roof so that the shingles would be "matching," but not for any structural, water-, or mold-related reason.

Plaintiffs submitted to Merchants an estimate for "renovations" to their home totaling $282,570. App. at 115. Merchants sent Plaintiffs a check for $12,158.06 for the roof and other items listed in McBrearty's report, but did not include coverage for any mold damage. After a second inspection of the attic confirmed that mold was present, however, Merchants informed Plaintiffs that the Policy covered the mold damage in the attic and paid the Policy limit of $10,000.

4

Plaintiffs complained to Merchants about the coverage it provided. As part of its review of Plaintiffs' claims, Merchants examined Plaintiffs under oath. During one examination, MaryAnn Andrews stated that Plaintiffs suffered health problems because of the mold and had to move out of the house until the mold problems were solved. Plaintiffs also informed Merchants that, based on advice from their physicians and engineers, they decided to "demolish and rebuild the house" and had incurred various moving, storage, design, and construction costs. Plaintiffs applied for a loan from the Small Business Association (the "SBA") to rebuild their home. In the course of doing so, they represented to the SBA that their "[i]nsurance recovery" was for loss in July 2012 and "is not related to Hurricane Sandy," and that the claim for damages as a result of the roof leak had been paid. App. at 185.

B

Plaintiffs filed a complaint against Merchants in New Jersey Superior Court, which Merchants removed to federal court. Plaintiffs asserted two claims: (1) breach of contract because Merchants refused to pay for claims properly submitted under the Policy and refused to renew the Policy in 2013; and (2) breach of the duty of good faith by failing to promptly and reasonably investigate each claim, unreasonably delaying the investigation of claims, conducting the investigation in an adversarial manner such that Plaintiffs were harassed, failing to effectuate a fair and reasonable settlement, and forcing Plaintiffs to initiate litigation. Following discovery, Merchants moved for summary judgment.

The District Court granted the motion. On the breach of contract claim, the Court concluded that Merchants had fully performed under the policy because it paid the policy limit of $10,000 for mold damage. Andrews v. Merchant Mut. Ins. Co., Civil Action No. 15-5147, 2016 WL 3690091, at *3 (D.N.J. July 12, 2016). It also held that Merchants was entitled to judgment as a matter of law on Plaintiffs' bad faith claim because there was "insufficient [evidence] to support an inference of bad faith." Id. at *4.

The District Court also denied Plaintiffs' motion for reconsideration because they "ha[d] not presented the Court with an intervening change in the controlling law, evidence not previously available, or a clear error of law that will result in manifest injustice." App. at 3. Plaintiffs appeal the order denying reconsideration.

II[1]

By appealing the order denying reconsideration, Plaintiffs essentially argue that the District Court erred in granting summary judgment to Merchants on their breach of contract and good faith claims. Although we generally review the denial of a motion for reconsideration for abuse of discretion,[2] we exercise plenary review to the extent that the denial is premised on an issue of law. Max's Seafood Cafe ex rel. Lou-Ann, Inc. v.

---

[1] The District Court had jurisdiction pursuant to 28 U.S.C. § 1332(a). We have jurisdiction pursuant to 28 U.S.C. § 1291.

[2] A party seeking reconsideration must show at least one of the following: "(1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court granted the motion . . . ; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." In re Vehicle Carrier Servs. Antitrust Litig., 846 F.3d 71, 87 (3d Cir. 2017) (quoting Howard Hess Dental Labs. Inc. v. Dentsply Int'l, Inc., 602 F.3d 237, 251 (3d Cir. 2010) (internal quotation marks omitted)).

Quinteros, 176 F.3d 669, 673 (3d Cir. 1999). Because an appeal of a motion for reconsideration "brings up the underlying judgment for review," Quality Prefabrication v. Daniel J. Keating Co., 675 F.2d 77, 78 (3d Cir. 1982), "the standard of review for a denial of a motion for reconsideration varies with the nature of the underlying judicial decision." Fed. Kemper Ins. Co. v. Rauscher, 807 F.2d 345, 348 (3d Cir. 1986). Here, Plaintiffs contend that the District Court made an error of law in granting summary judgment, and as a result, we exercise plenary review.[3] In doing so, we apply the same standard as the District Court, viewing facts and drawing all reasonable inferences in the non-movant's favor. Hugh v. Butler Cty. Family YMCA, 418 F.3d 265, 266-67 (3d Cir. 2005). Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

As to the breach of contract claim, Plaintiffs assert that a genuine dispute of material fact exists regarding the cause of the mold problems, noting that neither Tri-State's inspector nor the industrial hygienist actually went onto the roof. Plaintiffs argue that if they had gone onto the roof, rather than inspecting it from the ground in August 2012, they would have seen the damage to the roof, the roof would have been repaired before Sandy hit, no roof leaks would have occurred after Sandy, no water would have leaked through the roof and into the crawl space, and mold would not have grown

---

[3] To the extent that a ruling on a motion for reconsideration involved factual findings, we review those findings for clear error. Burtch v. Milberg Factors, Inc., 662 F.3d 212, 220 (3d Cir. 2011).

throughout the house. They further argue that the District Court misconstrued Warren Andrews's testimony to mean that the crawl space flooded during Sandy and that water caused mold to spread. Plaintiffs thus argue that the District Court erred in concluding that there were no genuine disputes concerning whether Merchants breached its contract with Plaintiffs.

Under New Jersey law,[4] a breach of contract claim requires the following: "(1) a contract between the parties; (2) a breach of that contract; (3) damages flowing therefrom; and (4) that the party stating the claim performed its own contractual obligations." Frederico v. Home Depot, 507 F.3d 188, 203 (3d Cir. 2007). Plaintiffs' claim fails because here there was no breach. First, once mold was discovered in the attic, Merchants paid the full amount of coverage for mold, $10,000. It thus fulfilled its obligations to pay for mold damage under the Policy. Second, there is no genuine dispute that the other mold issues arose from water in the crawl space, not the attic. Plaintiffs' inspector, Quality, and Merchants's inspector, Briggs, both found the highest concentration of mold in the crawl space. These findings are consistent with Briggs's conclusion that the elevated mold levels "arose from the crawl space and not the attic." App. at 116, 124. Warren Andrews further confirmed Briggs's conclusion concerning the source of the water in the crawl space, testifying that the crawl space flooded as a result of Sandy and, specifically, that the water "came up from . . . the sand" and "the water table rose." App. at 228. The source of the water dictated whether the Policy

---

[4] The parties do not dispute that New Jersey law applies here.

covered the resulting mold damage. Because the Policy did not cover damage caused by water that seeps up from the surface or flows through a building, it did not cover damage from flooding in the crawl space. As a result, Merchants had no contractual obligation to pay for the damage from the water that seeped into the crawl space from the ground. Accordingly, the District Court correctly granted judgment in Merchants's favor on this claim and thus properly denied the motion seeking reconsideration of this ruling.

As to their good faith claim, Plaintiffs assert that the District Court overlooked their testimony that the crawl space did not flood during Sandy and that a puddle on the vapor barrier must have been from rain leaking through the roof. They also argue that Merchants displayed a "lack of candor" to the District Court in stating in its statement of material undisputed facts that the crawl space flooded during Sandy, that the crawl space did not have a vapor barrier, and that flooding from below caused mold and its proliferation. Appellants' Br. at 16. This claim also fails.

New Jersey law establishes a general duty of good faith and fair dealing in every contract as well as duties specific to insurers. "[A]n insurance company owes a duty of good faith to its insured in processing a first-party claim," but no liability arises if a decision concerning a claim is "fairly debatable." Pickett v. Lloyd's, 621 A.2d 445, 450, 453-54 (N.J. 1993) (internal quotation marks omitted). A claimant who cannot establish a right to summary judgment on the substantive claim that the policy was breached, however, cannot prevail on a claim for an insurer's alleged bad faith refusal to pay the claim. Id. at 454.

Because no reasonable juror could conclude that Merchants breached its contract with Plaintiffs, Plaintiffs cannot succeed in claiming that Merchants acted in bad faith. As discussed regarding the breach of contract claim, the record does not support Plaintiffs' contention that the crawl space did not flood during Sandy and that water on the vapor barrier came from above, not below. Indeed, Warren Andrews stated under oath that "the only way the water would get there [on the plastic vapor barrier] is water had come up." App. at 228. Moreover, Merchants did not misrepresent the record in its statement of material undisputed facts accompanying its motion for summary judgment. In that statement, Merchants simply recounted the findings and conclusion of the industrial hygienist and the contents of its December 6, 2012 letter to Plaintiffs informing them of that report and the $12,158 payment. Neither the statement nor the way it was presented show a lack of good faith. Finally, the record shows that Merchants responded to Plaintiffs' claims, paid the amounts owed under the contract, and did not disregard its obligations or unreasonably fail to investigate or settle Plaintiffs' claims. See Badiali v. N.J. Mfrs. Ins. Grp., 107 A.3d 1281, 1287 (N.J. 2015). Therefore, the District Court properly granted summary judgment to Merchants on Plaintiffs' bad faith claim and correctly denied the request to reconsider that order.

III

For the foregoing reasons, we will affirm.