**SAN CARLOS IRRIGATION AND DRAINAGE DISTRICT,**
Plaintiff–Appellant,

v.

**The UNITED STATES,**
Defendant–Appellee.

No. 89–1007.

United States Court of Appeals, Federal Circuit.

June 7, 1989.
Rehearing Denied Aug. 24, 1989.

Riney B. Salmon, II, Jennings, Strouss & Salmon, Phoenix, Ariz., argued for plain-

---

**21.** *Douglas v. Veterans Admin.,* 5 MSPB 313, 5 M.S.P.R. 280 (1981).

**22.** 5 U.S.C. § 7703(c) (1982); *see Hayes,* 727 F.2d at 1537.

tiff-appellant. With him on the brief was Mikel L. Moore.

Jeffrey P. Kehne, Dept. of Justice, Washington, D.C., argued for defendant-appellee. With him on the brief were Donald A. Carr, Acting Asst. Atty. Gen., Martin W. Matzen and Louise F. Milkman. Also on the brief were Robert Moeller and William H. Swan, Dept. of Justice, Phoenix, Ariz., of counsel.

Before FRIEDMAN, Circuit Judge, MILLER, Senior Circuit Judge, and BISSELL, Circuit Judge.

BISSELL, Circuit Judge.

The San Carlos Irrigation and Drainage District (District) appeals the United States Claims Court's judgment granting the government's summary judgment motion and dismissing the complaint. *See San Carlos Irrigation & Drainage Dist. v. United States*, 15 Cl.Ct. 197 (1988). We reverse and remand.

## BACKGROUND

In 1924, Congress authorized construction of the Coolidge Dam across the Gila River as part of the San Carlos Irrigation Project (Project). Act of June 7, 1924, ch. 288, 43 Stat. 475. The stated purposes of the Act were to "provid[e] water for the irrigation of lands allotted to Pima Indians on the Gila River Reservation, Arizona," and to "irrigat[e] such other lands in public or private ownership, as in the opinion of the [Secretary of the Interior] can be served ... without diminishing the supply necessary for said Indian lands." *Id.* at 475. The total cost of the Project was to be distributed equally per acre among the Indian lands and the public or private lands served by the Project. *Id.* The Act authorized the Secretary to enter into a construction repayment contract with a district embracing the publicly-owned or privately-owned lands. *Id.* at 476. Four years later, Congress supplemented the Act to authorize the Secretary of the Interior (Secretary) to develop electrical power at the Coolidge Dam, to recoup power plant construction costs under a repayment contract,

to sell the dam's surplus power, and to apply the net revenues to reimburse the government for power plant construction, irrigation project construction, and operation and maintenance of the irrigation project, in that order. Act of March 7, 1928, ch. 137, 45 Stat. 200, 210–11.

The non-Indian landowners organized the District to represent them in dealings with the Secretary. On June 8, 1931, the District entered into a repayment contract with the government (Repayment Contract). The Repayment Contract defined the Project Works as including, inter alia, the Coolidge Dam, the San Carlos Reservoir, and everything pertaining thereto, including the power plant and electrical transmission lines. The government agreed to continue to maintain all of the Project Works, and the District agreed to pay annually five percent of the Project's construction costs and all operating and maintenance costs. The Repayment Contract was subsequently supplemented to set the amount of annual repayment on a sliding scale according to the amount of water in the reservoir. After the dam's completion in 1931, the government through the Bureau of Indian Affairs assumed exclusive control and management of the Project Works' operation and maintenance.

Subsequently, the Secretary executed a Joint Works Order defining the Joint Works to include the Coolidge Dam, San Carlos Reservoir and electrical power generating, transmission and distribution system, and continuing the government's responsibility of operating and maintaining those structures. The Order gave the District responsibility for operating and maintaining the segments of the Project Works serving the District lands exclusively.

On October 1, 1983, a storm caused large inflows of water into the San Carlos Reservoir. The reservoir began to spill over the spillway crest two days later. The electrical switchyard located between the dam and the powerhouse began to settle, causing the soil to cave in and result in damage to the switchyard's electrical equipment. The dam was shut down and evacuated,

leaving no way to generate electrical power or store water.

The District filed suit for breach of its contracts and agreements with the government. The District sought, inter alia, specific damages for one-half of the irrigation water lost and one-half of the electrical energy lost as a result of the dam's inoperability. The government moved for summary judgment arguing, inter alia, that the Repayment Contract does not give rise to a contractual duty to operate and maintain the spillway gates in order to benefit the District. The Claims Court found that the government "expressly agreed ... to operate and maintain the project," *San Carlos*, 15 Cl.Ct. at 203, but characterized the District's complaint as only alleging the breach of two contractual duties—(1) to maintain the dam's designed storage capacity by properly operating and maintaining the spillway gates and (2) to generate and sell electrical power by properly operating and maintaining the electrical generation system. *Id.* at 202. In granting the government's summary judgment motion, the Claims Court concluded that the duties alleged by the District were not created by the Repayment Contract and, therefore, the District had failed to state a claim for which relief could be granted. *Id.* at 203–04.

### ISSUES *

1. Whether the Claims Court erred in granting summary judgment.

2. Whether the District's claim sounds in tort, thus precluding the Claims Court from exercising jurisdiction.

### OPINION

### I

■ To recover for breach of contract, a party must allege and establish: (1) a valid contract between the parties, (2) an obligation or duty arising out of the contract, (3) a breach of that duty, and (4) damages caused by the breach. *See Giroir v.*

---

* The government argues that the District's claim is barred by the statute of limitations. Because the Claims Court has not yet considered that

*MBank Dallas, N.A.*, 676 F.Supp. 915, 918–19 (E.D.Ark.1987); *see also Pennsylvania, Dept. of Transp. v. United States*, 643 F.2d 758, 762 (Ct.Cl.) (noting "the well-established rule ... that a 'government contractor bears the burden of establishing the fundamental facts of liability, causation and resultant injury'" (citations omitted)), *cert. denied*, 454 U.S. 826, 102 S.Ct. 117, 70 L.Ed.2d 101 (1981). The District's complaint was incorrectly recast by the Claims Court as asserting only the specific duties of maintaining the spillways and maintaining the electrical generation facilities. The Claims Court failed to recognize that the District also expressly alleged a contractual duty requiring the government to operate and maintain the entire Joint Works. Complaint at 7, 8, *San Carlos Irrigation & Drainage District v. United States*, 15 Cl.Ct. 197 (1988).

■ The Claims Court concluded that the Repayment Contract could not be interpreted to show that the damages for lost water and lost electricity sought by the District were within the parties' contemplation. *San Carlos*, 15 Cl.Ct. at 202. Reliance upon that conclusion to hold that the District had failed to allege a duty which, if breached, would allow recovery of damages is inappropriate. Such an analysis is relevant to determining whether the District can prove that it has suffered any consequential damages. *Cf. Prudential Ins. Co. of Am. v. United States*, 801 F.2d 1295, 1300 (Fed.Cir.1986) (holding that consequential or special damages, in order to be recoverable, must be foreseeable at the time the contract is executed), *cert. denied*, 479 U.S. 1086, 107 S.Ct. 1289, 94 L.Ed.2d 146 (1987). Because the District alleged that the government has breached certain contractual duties and that damages occurred as a result of those breaches, the District has properly stated a claim for which relief can be granted.

■ Whether a contract creates a duty is a legal question of contract interpretation

question, *San Carlos*, 15 Cl.Ct. at 204, we decline to address that issue.

and thus freely reviewable by this court. *See George Hyman Constr. Co. v. United States,* 832 F.2d 574, 579 (Fed.Cir.1987). The Claims Court correctly held that the Repayment Contract created a general duty to operate and maintain the entire Joint Works, *San Carlos,* 15 Cl.Ct. at 203, but then did not allow the District to prove that the duty had been breached. Instead, the Claims Court focused on the damages issue discussed above.

We construe that general duty as including within it the specific duties to operate and maintain the spillways and the electrical generation system. The government agreed to continue to maintain all of the Project Works. Moreover, the Repayment Contract expressly provides that the government will have exclusive control over the Project Works until Congress dictates otherwise. The Joint Works Order did not alter that duty with respect to the newly-defined Joint Works. The plain language of the Repayment Contract convinces us that the government contracted to keep the entire Joint Works, including the spillways and electrical generation system, in a state of repair and to safeguard against their failure. *See George Hyman,* 832 F.2d at 579 (acknowledging the task to interpret a contract "so that the words of [the unambiguous contract] provisions are given their plain and ordinary meaning"); *Fort Vancouver Plywood Co. v. United States,* 860 F.2d 409, 413 (Fed.Cir.1988) (applying the plain language analysis of contract interpretation). The Claims Court's error in failing to recognize that the District had established such a contractual duty requires us to reverse the summary judgment as based on an erroneous legal interpretation. *See Palumbo v. Don–Joy Co.,* 762 F.2d 969, 976 n. 5, 226 USPQ 5, 8 n. 5 (Fed.Cir.1985) (ruling that "legal errors made by the district court ... require reversal of its grant of summary judgment"). If the District can prove that the government has breached its duty to maintain the Joint Works, including the spillways and the electrical generation system, general damages may be recovered. *See, e.g., Commerce Int'l Co. v. United States,* 338 F.2d 81, 86 (Ct.Cl.1964) (recognizing that, in addition to a breach, the plaintiff in a contract case must prove the damages ensuing from that breach). The District may be able to recover consequential damages if it can prove that they were foreseeable at the time of contract formation. *Prudential,* 801 F.2d at 1300.

## II

■ The Claims Court alternatively based its decision on the ground that the claim alleged by the District sounds in tort, explaining that the Tucker Act specifically precludes the Claims Court from exercising jurisdiction over claims sounding in tort. *See* 28 U.S.C. § 1491(a)(1) (1982). Interpreting the District's claim as asserting negligent maintenance of the spillways and the power plant, the Claims Court held that it was not the proper forum to hear the claim. *San Carlos,* 15 Cl.Ct. at 204.

An action arising "primarily from a contractual undertaking," however, may be maintained in the Claims Court "regardless of the fact that the loss resulted from the negligent manner in which defendant performed its contract." *H.F. Allen Orchards v. United States,* 749 F.2d 1571, 1576 (Fed.Cir.1984) (quoting *Bird & Sons, Inc. v. United States,* 420 F.2d 1051, 1054, 190 Ct.Cl. 426 (1970)), *cert. denied,* 474 U.S. 818, 106 S.Ct. 64, 88 L.Ed.2d 52 (1985). This is such an action. The Repayment Contract created the duties allegedly breached by the government. Accordingly, even if the government negligently failed to maintain and operate the Joint Works, the claim is properly before the Claims Court. *See Fountain v. United States,* 427 F.2d 759, 761, 192 Ct.Cl. 495 (1970) (stating that "[i]f contractual relations exist, the fact that the alleged breach is also tortious does not foreclose Tucker Act jurisdiction"), *cert. denied,* 404 U.S. 839, 92 S.Ct. 131, 30 L.Ed.2d 73 (1971).

## CONCLUSION

The summary judgment must be reversed because it was based on an erroneous interpretation of the Repayment Contract. The questions of breach, causation

and damages, which were not addressed below, must obviously await a trial on the merits. The District's claim against the government arises out of a contractual undertaking and, therefore, falls within the Claims Court's Tucker Act jurisdiction.

## COSTS

Each party is to bear its own costs.

REVERSED and REMANDED.