**SAN CARLOS IRRIGATION AND DRAINAGE DISTRICT, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 460–86L.

United States Court of Federal Claims.

Sept. 30, 1994.

Riney B. Salmon, II, Phoenix, AZ, for plaintiff.

Glen R. Goodsell, Gen. Lit. Section, Environment and Natural Resources Div., U.S. Dept. of Justice, with whom was Robert Moeller, Office of the Sol., U.S. Dept. of the Interior, Washington, DC, of counsel, for defendant.

### OPINION

MARGOLIS, Judge.

This contract case is before the court for entry of judgment after a trial on damages. Plaintiff, San Carlos Irrigation and Drainage District ("District"), seeks to recover $4,673,-834, the amount it paid defendant from 1984 to 1994 for pumping power. Plaintiff asserts it may recover $4,673,834 for defendant's breach of the Repayment Contract because defendant was not authorized to charge the District for pumping power. Alternatively, plaintiff claims it may recover the difference between the amount it paid defendant for pumping power following the breach of contract and defendant's actual cost of that pow-

er. After carefully reviewing the record, the court awards plaintiff damages in the amount of $667,021.

## FACTS

Because the facts of this case have been discussed in four previous opinions, *see San Carlos Irrigation and Drainage District v. United States,* 877 F.2d 957 (Fed.Cir.1989); *San Carlos Irrigation and Drainage District v. United States,* 26 Cl.Ct. 229 (1992); *San Carlos Irrigation and Drainage District v. United States,* 23 Cl.Ct. 276 (1991); *San Carlos Irrigation and Drainage District v. United States,* 15 Cl.Ct. 197 (1988), the court need not restate them here.

## DISCUSSION

Defendant breached its obligation under the Repayment Contract to operate and maintain the Joint Works. 23 Cl.Ct. at 286–87. The measure of damages plaintiff sustained as a direct result of defendant's breach of contract is the difference between the amount defendant charged the District for pumping power and the actual cost of that power from 1984 to 1994. *See* 26 Cl.Ct. at 230–31. Plaintiff cannot recover for alleged "lost" surplus power or water. *Id.* at 231–32. Moreover, the court denies the District's claim for all pumping power charges it paid after 1983. Plaintiff argues that the 1924 San Carlos Project Act, Ch. 288, 43 Stat. 475 (1924), 1928 Power Development Act, Ch. 137, 45 Stat. 200, 210 (1928), Repayment Contract, Joint Works Order, and legislative history preclude defendant from charging the District for pumping power. *See* Plaintiff's Post–Trial Memorandum in Support of Judgment for Damages Against the United States at 3–27 [*hereinafter* P's Brief]. The court rejects this argument because the evidence does not establish that the parties foresaw and considered the possibility of the Coolidge Dam failing when they entered into their contractual relationship. Read most favorably to the District, the 1924 Act, 1928 Act, Repayment Contract, Joint Works Order, and legislative history suggest that Congress intended the District to obtain pumping power free of charge *as long as the Coolidge Dam produced power,* something that has not happened since 1983. *See, e.g.,* Plaintiff's Trial Exhibit (P's ex.) 30 (Letter from John F. Truesdell, U.S. Indian Irrigation Service, to Geraint Humphreys, Chief Field Counsel, Indian Service (Apr. 26, 1935) ("Congress had no idea whatever that *when gross revenues from power existed,* they would not be used to pay the cost of producing power.")) (Emphasis added.)

Defendant began to charge plaintiff for pumping power using a rate based on the theoretical cost of Coolidge Dam power in 1983. *See* Trial Transcript (Tr.) at 66, 108–09, 113, 143–44, 323–24, 335–37; P's ex. 12. That rate was 3.34 ¢/KWH (kilowatt-hour) from 1985 through 1987, P's ex. 5 (Esquerra ex. 3 at 1); P's ex. 28 (Strickland ex. 1 at 6, 8), and 3.66 ¢/KWH from 1988 through 1990. P's ex. 5 (Esquerra ex. 3 at 1); P's ex. 28 (Strickland ex. 2 at 1). Defendant revised the method used to calculate the charge for pumping power in 1991. Rather than basing the pumping power charge on the theoretical cost of Coolidge Dam power, defendant started to assess the District for pumping power based on the cost of power obtained through the Parker–Davis entitlement program. *See* P's ex. 28 (Strickland ex. 4 at 1). Defendant determined that a rate of 2.712 ¢/KWH accurately reflected the actual cost of the pumping power it provided to the District. *Id.*

In deference to defendant's ratemaking authority, *Chevron v. Natural Resources Defense Council,* 467 U.S. 837, 842–45, 104 S.Ct. 2778, 2781–83, 81 L.Ed.2d 694 (1984), the court finds that a charge for pumping power based on a rate of 2.712 ¢/KWH reflects the actual cost of that power during the years at issue.

Defendant included the following pumping power charges in the Project's assessments from 1984 to 1993:

| Year | KWH [1] | Pumping Power Charge [2] |
|------|---------|--------------------------|
| 1984 | 25,441,314 | $ 488,000 |
| 1985 | 11,919,701 [3] | $ 489,800 |
| 1986 | 26,815,253 | $ 815,556 |
| 1987 | 24,110,321 | $1,061,390 |
| 1988 | 25,935,296 | $ 800,000 |
| 1989 | 7,715,663 [4] | $1,070,000 |
| 1990 | 24,516,066 | $ 905,923 |
| 1991 | 16,943,302 | $ 808,000 |
| 1992 | 3,424,027 | $ 889,000 |
| 1993 | 5,566,149 | $1,200,000 |

Plaintiff proved it incurred damages from defendant's breach of contract amounting to $193,976 in 1984. Plaintiff established that defendant's actual cost for the Project's pumping power in 1984 was $100,047. P's ex. 29. Plaintiff also showed that defendant assessed the Project $488,000 for pumping power in 1984. P's ex. 41; Tr. at 323. Therefore, plaintiff may recover $193,976 (one-half the difference between $488,000 and $100,047).[5]

For 1985, 1986, and 1987, plaintiff established damages of $197,334.[6] From 1985 through 1987, defendant charged for pumping power using a rate of 3.34 ¢/KWH, based on the theoretical cost of Coolidge Dam power, whereas a charge for pumping power based on defendant's actual cost of pumping power would have used a rate of 2.712 ¢/KWH. Defendant supplied the Project with 62,845,275 KWH of pumping power over this three-year period. Thus, plaintiff may recover $197,334 (one-half the difference between 3.34 ¢/KWH and 2.712 ¢/KWH times 62,845,275 KWH). *Cf.* P's ex. 28 (Strickland ex. 1 at 12).

From 1988 through 1990, plaintiff showed it sustained damages of $275,711. During that period, defendant charged for 58,167,025 KWH of pumping power using a rate of 3.66 ¢/KWH, instead of 2.712 ¢/KWH. Therefore, plaintiff may recover $275,711 (one-half the difference between 3.66 ¢/KWH and 2.712 ¢/KWH times 58,167,025 KWH).

Finally, beginning in 1991, defendant charged plaintiff for pumping power based on a rate defendant set using the actual cost of the pumping power. Therefore, plaintiff did not sustain any damages from defendant's breach of contract after 1991.

## CONCLUSION

For the foregoing reasons, the court finds that plaintiff is entitled to recover $667,021 from defendant. The Clerk will enter judgment accordingly. In addition, defendant's motion to dismiss is denied.

---

1. *See* P's ex. 25 (P–Q Project Pumping at 2) (except as noted).

2. *See* P's ex. 41; P's ex. 3A–M; P's Brief, *supra* at 28.

3. P's Brief, *supra* at 28; *but see* P's ex. 25 (reporting 17,023,224 KWH).

4. P's Brief, *supra* at 28; *but see* P's ex. 25 (reporting 26,250,240 KWH).

5. Plaintiff represents farmers who have an interest in one-half of the Project's 100,000 acres.

6. Defendant argues that the court cannot award damages for 1985 and 1986 because the District did not notify the Bureau of Indian Affairs before 1987 about its claim. *See* Motion to Dismiss Based on the Evidence Produced at Trial and Defendant's Proposed Findings of Fact at 19–20 n. 8. The court rejects this argument because defendant failed to identify, and the court has not discovered, any legal authority for the proposition that notification is required for general contract damages.