**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 22-2754

_____

JILL M. ALBAN; GRANT M. ALBAN; MARY ARNOLD; AL BAKER;
KATRINA BONAR; STEVEN BRUZONSKY; MONICA BUSHEY;
MELINDA DENEAU; JENNIFER DILLON; JEFFREY GANNON;
PAMELA G. GOESSLING; EUGENE THOMAS GOESSLING;
SHERYL HALEY; LESLIE DENISE HART; BRUCE HERTZ; MARIA
KOOKEN; ADAIR LARA; KORI LEHRKAMP; MICHAEL LEHRKAMP;
JOHN LEVYA; DANIEL MORRIS; JUDY A. REIBER; RICHARD TOMASKO;
JOHN O'NEIL JOHNSON TOYOTA, LLC;
RUSH TRUCK CENTERS OF ARIZONA, INC.,
Appellants

v.

KAWASAKI KISEN KAISHA, LTD; K LINE AMERICA, INC.

_____

On Appeal from the United States District Court
For the District of New Jersey
(Civil Action No. 2-21-cv-08852)
District Judge:  Honorable Esther Salas

_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
May 19, 2023

_____

Before:  GREENAWAY, JR., PHIPPS, and CHUNG, Circuit Judges

(Filed: June 7, 2023)

_____

OPINION[1]
_____

**CHUNG**, Circuit Judge.

A proposed class of plaintiffs ("plaintiffs") sued Kawasaki Kisen Kaisha and "K" Line America (collectively, "K Line") for breach of a settlement agreement reached in a multidistrict litigation. The District Court dismissed plaintiffs' amended complaint with prejudice for failure to adequately plead damages caused by K Line's alleged breach. The District Court also determined that specific performance was not an appropriate remedy. For the reasons below, we will affirm the judgment of the District Court.

I.[2]

In 2013, direct and indirect purchasers of vehicle carrier services[3] sued K Line and other providers of such services in various class actions around the country. The purchasers alleged violations of state and federal antitrust laws stemming from the providers' participation in a "global conspiracy to fix price[s] and allocate the market and customers of vehicle carrier services." Joint Appendix ("JA") 006. These class actions

---

[1] This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

[2] Since we write only to benefit the parties, we will only briefly recite the facts.

[3] "Vehicle carrier services" are ocean common carriers that transport vehicles between countries. "Direct purchasers" of these carrier services are those who receive vehicles directly from the carriers, while "indirect purchasers" are purchasers who ultimately received the vehicles but did not receive the vehicles directly from the carriers and to whom carrier costs were passed along. See In re Vehicle Carrier Servs. Antitrust Litig., 846 F.3d 71, 77–78 (3d Cir. 2017), as amended (Jan. 25, 2017).

were eventually consolidated into the multidistrict "Vehicle Carrier litigation" (In re Vehicle Carrier Services Antitrust Litigation, No. 13-3306). Plaintiffs are a proposed class of indirect purchasers from the Vehicle Carrier litigation.

In 2015, while K Line's motion to dismiss[4] was pending in the Vehicle Carrier litigation, K Line and the plaintiffs executed a Memorandum of Understanding ("MOU") to settle plaintiffs' claims against K Line. Under the MOU, K Line promised to pay a specified settlement amount in exchange for release "from claims [plaintiffs] have asserted or may have asserted related to the sale of Vehicle Carrier Services in In re Vehicle Carrier Services Antitrust Litigation … ." JA077. The parties agreed that the MOU would remain in effect, even if the motion to dismiss were successful, and provided for the negotiation of a "long-form" agreement.[5] JA078. The MOU specified that K Line would deposit the settlement amount into an interest-bearing escrow account. Almost a month later, the parties amended the MOU to allow K Line "an additional ten (10) business days … following the date on which counsel for the [plaintiffs] provide[s] counsel for K Line with the necessary escrow account information" to fund the escrow account. JA082. The parties did not formally move for preliminary approval of the

---

[4] All defendants in the Vehicle Carrier litigation, including K Line, filed a consolidated motion to dismiss.

[5] The MOU reflected the parties' "expect[ation] to enter into a long-form settlement agreement providing further details regarding this MOU." JA078. The MOU also provided that the parties "intend this MOU to be a binding agreement … regardless of the occurrence of any decisions, developments or events materially adverse to plaintiffs[]." Id.

settlement or request a stay of the case pending approval of the settlement agreement from the District Court.[6]

Eight days after the parties amended the MOU, the District Court granted K Line's motion to dismiss with prejudice, determining that the Shipping Act of 1984 barred the federal antitrust claims, preempted the state antitrust claims, divested federal courts of jurisdiction, and required that private claims be brought before the Federal Maritime Commission ("FMC"). The District Court also noted that it was required to address the motion to dismiss, even though broad settlement terms had been reached between K Line and plaintiffs,[7] because no motion to consider the settlement agreement was before it at that time.

Plaintiffs moved for reconsideration requesting that the District Court retain jurisdiction solely to consider preliminary and final approval of its settlement agreement with K Line. The District Court denied plaintiffs' motion for reconsideration and declined to retain jurisdiction. Plaintiffs appealed the District Court's grant of K Line's motion to dismiss and denial of their motion for reconsideration and the Third Circuit affirmed both. While those appeals were pending, plaintiffs also filed an action before the FMC. The FMC dismissed their complaint with prejudice upon finding that indirect

---

[6] The MOU provided that plaintiffs "may inform the Court that they have reached an agreement in principle to settle this Action with K Line and request that the Court stay the proceedings." JA079.

[7] The agreement did not bind the direct purchaser plaintiffs or other defendants.

4

purchasers lacked standing under the direct-purchaser rule and declined to consider the settlement agreement.

Plaintiffs aver that the parties continued long-form agreement negotiations until plaintiffs lost their appeal of the District Court's decisions granting dismissal and denying reconsideration. Despite K Line's refusal to continue negotiations over the long-form agreement, from 2017 to 2021, plaintiffs continued their efforts to secure K Line's execution of the MOU and provided counsel for K Line with the required escrow account information in an attempt to get K Line to deposit the agreed-upon funds. Eventually, plaintiffs filed a breach-of-contract class action in the United States District Court for the Eastern District of Virginia alleging that K Line breached its obligations under the MOU by failing to fund the escrow account. Plaintiffs sought damages and specific performance,[8] but later voluntarily dismissed that action due to subject matter jurisdiction concerns.

Relevant here, plaintiffs then filed the same breach-of-contract class action in the Superior Court of New Jersey. K Line removed the case to federal court in the District of New Jersey and moved to dismiss the amended complaint.[9] The District Court granted K Line's motion and dismissed the amended complaint with prejudice for failure to state a claim.

Plaintiffs timely appealed.

---

[8] See Jill Alban, et al. v. Kawasaki Kisen Kaisha, Ltd., et al., No. 3:20-cv-00342 (ECF No. 1).

[9] Plaintiffs amended their complaint to address a venue issue.

II.[10]

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). To recover damages based on a breach of contract, a plaintiff "must allege and establish: (1) a valid contract between the parties, (2) an obligation or duty arising out of that contract, (3) a breach of that duty, and (4) damages caused by the breach." Westover v. United States, 71 Fed. Cl. 635, 640 (2006) (citing San Carlos Irrigation and Drainage Dist. v. United States, 877 F.2d 957, 959 (Fed. Cir. 1989)); see also, Williams v. Metzler, 132 F.3d 937, 946 (3d Cir. 1997) ("Basic contract principles apply to settlement agreements … [Where a] settlement agreement involves a right to sue derived from a federal statute … federal common law principles govern construction of the contract.").[11]

Specific performance is an equitable remedy, in the alternative to damages, that "will be granted in the discretion of the court against a party who has committed or is

---

[10] The District Court had jurisdiction under 28 U.S.C. § 1332(d). We have jurisdiction to review the District Court's dismissal pursuant to 28 U.S.C. § 1291. We review the dismissal de novo, accepting all well-pleaded allegations as true and drawing all reasonable inferences in favor of plaintiffs, the non-moving parties. See Brown v. Card Serv. Ctr., 464 F.3d 450, 452 (3d Cir. 2006).

[11] As noted above, the Vehicle Carrier litigation involved allegations that both state and federal law had been violated. In considering whether a breach of that settlement had occurred, the District Court determined that federal common law applied because the settlement agreement involved a right to sue derived from federal statute, the Shipping Act of 1984. In re Vehicle Carrier Servs. Antitrust Litig., No. 13-3306, 2015 WL 5095134, at *1 (D.N.J. Aug. 28, 2015). Because the parties do not challenge this determination, we need not reach that issue here.

6

threatening to commit a breach of [a contractual] duty." Restatement (Second) of Contracts § 357; id., ch. 6, section 3, intro. note (1981); see also, Wallach v. Eaton Corp., 837 F.3d 356, 367 (3d Cir. 2016) ("[W]e have looked to the Restatement [of Contracts] in the past when applying the federal common law of contracts generally.").[12] Specific performance "will be refused if such relief would be unfair because … the relief would cause unreasonable hardship or loss to the party in breach [or] the exchange is grossly inadequate or the terms of the contract are otherwise unfair." Restatement (Second) of Contracts § 364 (1981).

Plaintiffs challenge the District Court's determination that they failed to allege damages that were caused by K Line's purported breach of the contract.[13] Plaintiffs also argue that the District Court abused its discretion in concluding that specific performance was not an appropriate remedy.

We will affirm the District Court on both.

---

[12] "Because the equitable remedy of specific performance is not a matter of absolute right but rests within the sound discretion of the court, we review the district court's decision to grant [or deny] specific performance for an abuse of discretion." Sheet Metal Workers' Int'l Ass'n Loc. 19 v. Herre Bros., 201 F.3d 231, 249 (3d Cir. 1999).

[13] In their Amended Complaint, plaintiffs sought damages "including but not limited to compensatory damages, consequential damages, pre- and post-judgment interest, fees and costs of this suit, and all other sums allowed by law." JA068–69. On appeal, plaintiffs do not contest nor address the District Court's failure to consider the availability of any such requested costs or similar damages. Accordingly, we consider abandoned any claims that plaintiffs are entitled to such damages. Graden v. Conexant Sys. Inc., 496 F.3d 291, 296 n.7 (2007) ("Absent compelling circumstances … failing to raise an argument in one's opening brief [forfeits] it.").

7

A.

Plaintiffs fail to adequately assert that the damages sought were caused by K Line's alleged breach. Plaintiffs allege that K Line had a duty to fund the escrow account within ten days of receiving the account information, and K Line breached this duty by failing to do so. Plaintiffs argue that "it is K Line's failure … to fund the settlement agreement that prevents Plaintiffs and the members of the class from accessing the money they were promised under the MOU." Appl. Br. at 18. Thus, the plaintiffs argue that they are damaged by this breach because they cannot acquire the settlement funds. We are not persuaded.

To state a claim for breach of contract, plaintiffs must establish that the damages asserted are caused by the breach; here, the asserted damages were not caused by K Line's breach. Despite plaintiffs' many efforts– by a motion for reconsideration to the District Court, appeal to this Court, and suit before the FMC– they have secured no forum with jurisdiction over these claims. See In re Vehicle Carrier Servs. Antitrust Litig., 846 F.3d 71 (3d Cir. 2017), as amended (Jan. 25, 2017); In re Vehicle Carrier Services, 2019 WL 5558120 (FMC Oct. 21, 2019). This matters because the MOU requires final settlement or "none of the payments [from the escrow account] … shall be made." JA077. Plaintiffs, therefore, cannot "access[] the money they were promised," not because of K Line's refusal to fund the account, but because they have failed to secure a forum for approving a settlement.

Plaintiffs argue that the District Court has the necessary jurisdiction because the parties contemplated the dismissal of their claims in the Vehicle Carrier litigation and

8

agreed that the MOU would remain "effective … regardless of the occurrence of any decisions, developments or events materially adverse to plaintiffs []." JA078. But plaintiffs neglect to note that the MOU also contemplated preserving jurisdiction, in light of a possible dismissal, by allowing plaintiffs to "request that the Court stay the proceedings." JA079. They did not so move, and this is the source of their asserted damages, not K Line's failure to fund the escrow account. Plaintiffs apparently calculated that mere oral advisement to the Court, without a formal motion to stay, would preserve their ability to later obtain settlement approval. While we are sympathetic to plaintiffs' argument that the thirty-seven days which elapsed from execution of the MOU to dismissal of their claims did not permit for negotiation of a long-term agreement and motion for preliminary approval, their failure to formally request a stay was a miscalculation and, as this Court previously determined, the District Court did not abuse its discretion in denying plaintiffs' request that it retain jurisdiction over the settlement despite the absence of a formal motion to stay. In re Vehicle Carrier Servs. Antitrust Litig., 846 F.3d 71, 87–88 (3d Cir. 2017), as amended (Jan. 25, 2017). Thus, even if the MOU remains "effective" per the terms, that status does not restore the District Court's jurisdiction over the class action claims and the settlement.[14]

---

[14]     Plaintiffs rely on Ehrheart v. Verizon Wireless, 609 F.3d 590 (3d Cir. 2010) to argue that K Line should not be allowed to evade their responsibilities pursuant to the MOU. In Ehrheart, the District Court vacated its preliminary settlement approval due to a subsequent change in the law which eliminated plaintiffs' underlying cause of action. 609 F.3d at 595–597. We deemed this error because "the [new law] did not change the District Court's ability to grant effective relief. The Appellants still had a 'personal stake in the outcome'—the settlement agreement—and *the District Court continued to possess the ability and the authority to approve the settlement.*" Id. at 596 (emphasis added).

9

Attempting to bootstrap settlement jurisdiction to their current breach-of-contract case, plaintiffs also rely on Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 382 (1994) to argue that they are "entitled to return to any court with jurisdiction in order to bring an action for breach of contract to enforce the settlement." Appl. Br. at 27. Kokkonen is distinguishable because the settlement agreement there could be enforced on its terms without further approvals from the court. In contrast, the class action settlement here cannot move forward without approval and as discussed above, no court has such authority (such authority being separate and distinct from the District Court's jurisdiction over the instant breach-of-contract claim.).

We will affirm that the District Court properly dismissed plaintiffs' amended complaint for failing to plead damages caused by K Line's breach.

B.

Plaintiffs' argument that specific performance is an available remedy also fails. Specific performance is an equitable remedy and imposing it here would produce an

---

Plaintiffs argue that "the District Court, like the district court in Ehrheart, erroneously let K Line replay its hand." Appl. Br. at 22.

Ehrheart is readily distinguishable, however. The Vehicle Carrier litigation was not stayed, no preliminary approval was obtained, the claims were dismissed, and the District Court declined to retain jurisdiction over the settlement. See In re Vehicle Carrier Servs. Antitrust Litig., No. 13-3306 ES, 2015 WL 5095134 (D.N.J. Aug. 28, 2015), aff'd, 846 F.3d 71 (3d Cir. 2017), as amended (Jan. 25, 2017); In re Vehicle Carrier Servs. Antitrust Litig., No. CV133306ESJAD, 2016 WL 1628879 (D.N.J. Apr. 25, 2016), aff'd, 846 F.3d 71 (3d Cir. 2017), as amended (Jan. 25, 2017). Accordingly, unlike the Ehrheart court, the District Court here does not "possess the ability and the authority to approve the [Vehicle Carrier litigation] settlement." Ehrheart, 609 F.3d at 596.

10

inequitable result.[15]  Plaintiffs assert, that if the District Court ordered specific performance, the "parties would ... complete the steps envisioned by the MOU: negotiate a formal settlement agreement, move for preliminary approval, and obtain final approval (subject to approval by the District Court under Rule 23(e))."  Appl. Br. at 26.  The plaintiffs note that the MOU ties "[n]either the long-form settlement agreement nor the escrow agreement … to the present existence of the [Vehicle Carrier litigation]."  Repl. Br. at 6.  Be that as it may, the MOU *does* tie the release of the funds to approval of the settlement and, unfortunately for plaintiffs, no forum has the authority to so approve.  See In re Vehicle Carrier Servs. Antitrust Litig., 846 F.3d 71 (3d Cir. 2017), as amended (Jan. 25, 2017); In re Vehicle Carrier Services (VCS IV), Nos. 16-0007 & 16-0010, 2019 WL 5558120 (FMC Oct. 21, 2019).[16]  As a result, specific performance would cause K Line to remit funds only to have them held in escrow indefinitely.  The District Court did not abuse its discretion in holding that specific performance of the MOU would be inequitable and cause unreasonable and unnecessary loss to K Line.

---

[15] K Line also argues that specific performance is unavailable because plaintiffs have an adequate remedy in law.  We need not decide that issue here because we find the District Court did not abuse its discretion.

[16] Plaintiffs argue that the District Court can still give final approval of the settlement of claims in the Vehicle Carrier litigation because courts "can approve a settlement of claims not currently before that court."  Appl. Br. at 26–27, citing Matsushita Elec. Indus. Co. v. Epstein, 516 U.S. 367, 381–83 (1996).  But Matsushita merely stands for the proposition that when a court presides over settlement of a *pending* dispute, the parties' settlement may include unadjudicated claims that could be brought exclusively in other forums.  See id. at 386.  There is no such settlement agreement in the instant, pending action.

11

## III.

For the foregoing reasons, the amended complaint does not establish damages caused by K Line's breach of contract and specific performance is not an appropriate remedy. We therefore will affirm the District Court's judgment.