NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**KEYES HELIUM COMPANY, LLC, CERTAIN UNDERWRITERS AND CERTAIN INSURANCE COMPANIES, SUBSCRIBING TO POLICY NO. B1740200667000,**
*Plaintiffs-Appellants*

**v.**

**UNITED STATES,**
*Defendant-Appellee*

---

2024-1132

---

Appeal from the United States Court of Federal Claims in No. 1:22-cv-00434-PEC, Judge Patricia E. Campbell-Smith.

---

Decided:  June 23, 2025

---

BRET SUMNER, Beatty & Wozniak, P.C., Denver, CO, argued for plaintiff-appellant Keyes Helium Company, LLC.

SAMUEL J. DOLAN, Hall Maines Lugrin, PC, Houston, TX, argued for plaintiff-appellant Certain Underwriters and Certain Insurance Companies.  Also represented by

CAROLINE E. BOSSIER, MAURICIO RONDON.

JOSHUA DAVID TULLY, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for defendant-appellee. Also represented by BRIAN M. BOYNTON, TARA K. HOGAN, PATRICIA M. MCCARTHY.

_____

Before LOURIE, DYK, and REYNA, *Circuit Judges.*

LOURIE, *Circuit Judge.*

Keyes Helium Company, LLC and its subrogated insurers (collectively, "Keyes") appeal from a final judgment of the United States Court of Federal Claims ("the Claims Court") dismissing various claims arising from a contract for the storage and delivery of helium with the United States ("the government"). *See Keyes Helium Co., LLC v. United States,* 167 Fed. Cl. 283 (2023), J.A. 1–15. For the following reasons, we affirm-in-part, reverse-in-part, vacate-in-part, and remand.

## BACKGROUND

The government, acting through the Bureau of Land Management ("BLM"), a division of the United States Department of the Interior, administers the federal helium program. *See* Helium Stewardship Act, 50 U.S.C. § 167. Keyes, a private helium refiner, operates the first refinery on BLM's helium pipeline system. Together, BLM and Keyes executed a contract for the storage and delivery of helium. *See* J.A. 42–60 ("Contract for the Storage and Delivery of Helium" or "Contract").

The Contract, which was renewed in August 2020, provided that BLM would store Keyes' crude helium within the federal helium system subject to certain pre-conditions. For instance, the Contract required that for Keyes' crude helium-gas volumes to be stored at BLM's facility, the gas

mixture had to contain "at least 65 percent helium by volume" and could not contain "more than 3 percent methane [] by volume." J.A. 46, § 2.1(a). At Keyes' request, the Contract also required that BLM deliver the stored helium gas mixture to Keyes' refinery. J.A. 47–48, § 2.3. At the point of delivery, the Contract imposed certain conditions on BLM. Specifically, the Contract required that BLM deliver "a helium-gas mixture containing *not less than 50 percent helium by volume." Id.* (emphasis added). For BLM deliveries that met that specification, among other requirements, Keyes agreed "to compensate" BLM for the related delivery costs. *Id.* The relevant delivery requirements imposed on BLM by Section 2.3 of the Contract, as discussed above, state:

(a) The helium will be delivered to Person[1] at Person's Delivery/Acceptance Point where the Federal Helium Pipeline is connected with a line that goes to Person's facilities, and in a helium-gas mixture containing *not less than 50 percent helium by volume,* and at a pressure existing in the system at the time and at the point of delivery, and will be delivered under conditions that permit suitable measurement and analysis specified by Article VI.

(b) Person agrees *to compensate* the United States, pursuant to Article VI, for any costs that the United States incurs to deliver a helium-gas mixture containing not less than 50 percent helium by volume.

*Id.* (emphasis added). Moreover, the contract contains no limitations on damages except for instances of force majeure, which is not at issue here. J.A. 57, § 9.1.

---

[1]    "Person" refers to Keyes. J.A. 44.

Following multiple alleged off-specification ("off-spec") deliveries of helium to Keyes facility, Keyes filed a complaint against the government asserting breach of contract by BLM, among other claims, on April 14, 2022. *See* J.A. 20–60. Keyes' complaint identified at least two instances in which it alleged that BLM delivered off-spec helium gas mixtures containing less than the required 50% helium by volume and, in some instances, containing greater than 60% methane by volume. *See* J.A. 29–31 (December 2020 Off-Spec Delivery Event); J.A. 33 (February 2021 Off-Spec Delivery Event). Keyes explained that BLM breached its Contract with Keyes by "[f]ailing to deliver the helium-gas mixture in accordance with the terms and conditions of the [Contract]." J.A. 36, para 84 a. Keyes specifically alleged that, on December 15, 2020, BLM began delivering crude helium into Keyes' refinery system that contained helium concentrations below 50% by volume and "methane concentrations in excess of 60% [by] volume." J.A. 36, para 83. As a result, Keyes alleged that it incurred significant damages that were both "reasonably foreseeable" and "proximate" to BLM's breach of the Contract. J.A. 37, para 85, 86.

In opposition to the government's motion to dismiss, Keyes also asserted that its complaint sufficiently pleaded a claim for breach of an implied duty of good faith and fair dealing because it alleged facts sufficient to establish that BLM's delivery of "damaging levels of contaminants with the crude helium completely destroyed its ability to achieve the benefit of the bargain with the United States (i.e., transporting crude helium for refining and resale)."[2] J.A. 148.

---

[2]    In the alternative, Keyes requested that the Claims Court allow it to amend its complaint to more clearly state the claim for breach of the duty of good faith and fair

As an alternative to its breach of contract claims, Keyes alleged that the government would also have liability for damages sounding in tort in the District Court of the Northern District of Texas as a result of the government's off-spec deliveries. J.A. 37–38. It alleged that BLM failed to exercise its duty of reasonable care in "performing services relating to the delivery of helium" and "obtaining and/or disclosing information regarding the unacceptable and damaging levels of methane in the helium." J.A. 37.

Finally, in addition to its claim for breach of contract and alternative tort claims, Keyes alleged a takings claim under the Fifth Amendment of the United States Constitution actionable under the Tucker Act, 28 U.S.C. § 1491. J.A. 38–39. Keyes alleged that "the United States has paid nothing to Keyes Helium Company for its valuable helium lost as a result of the acts and omissions of the United States acting through BLM," and instead of "allocate[ing] replacement helium volumes to Keyes Helium Company, the United States allocated these helium volumes to other companies on the BLM helium system." J.A. 38–39, para 93–94.

The Claims Court dismissed all of Keyes' claims, including its alternative tort claims, under Rule 12(b)(6) of the Rules of the United States Court of Federal Claims on August 31, 2023. Keyes timely appealed, and we have jurisdiction under 28 U.S.C. § 1295(a)(3).

## DISCUSSION

Keyes contends on appeal that the Claims Court erred in dismissing its breach of contract claims, alternative claim in tort, and takings claim. After consideration of all

---

dealing. J.A. at 149 (citing *Metricolor LLC v. L'Oreal S.A.*, 791 F. App'x 183, 189 (Fed. Cir. 2019).

the parties' arguments, we agree that the Claims Court erred in its breach of contract analysis, which also infected its dismissal of the alternative tort claim. However, we disagree that the Claims Court erred in dismissing Keyes' takings claim. We discuss each issue in turn.

The Claims Court may dismiss a complaint if it fails "to state a claim upon which relief can be granted." RCFC, Rule 12(b)(6). "We review the Claims Court's dismissal for failure to state a claim de novo." *Oliva v. United States*, 961 F.3d 1359, 1362 (Fed. Cir. 2020). To survive a motion to dismiss, the claimant must provide sufficient factual matter in its complaint to state a plausible claim for relief. *Id.* "We take all plausible factual allegations in the complaint as true and construe the facts in the light most favorable to the non-moving party." *Id.*

Regarding the breach of contract claim, "[w]hether a contract creates a duty is a legal question of contract interpretation and thus freely reviewable by this court." *San Carlos Irr. & Drainage Dist. v. United States*, 877 F.2d 957, 959–60 (Fed. Cir. 1989). The Claims Court determined that Keyes had failed to establish a breach because there was no "contractually explicit basis for its claim," *i.e.*, there was no relevant obligation under the Contract. *Keyes*, 167 Fed. Cl. at 292. We disagree.

The Claims Court correctly recited that "[t]o recover for breach of contract, a party must allege and establish: (1) a valid contract between the parties, (2) an obligation or duty arising out of the contract, (3) a breach of *that duty*, and (4) damages *caused by the breach*." *Id.* at 290 (citing *San Carlos*, 877 F.2d at 959) (emphasis added). The court, however, overlooked its own recitation of the law, which explains that a breach of contract analysis necessarily flows from the alleged obligation identified in the contract. That is, once a duty is established under the contract at issue, we ask whether there was a breach of "*that* duty," and, if so, then we ask whether there were any "damages

caused by *the* breach." *San Carlos*, 877 F.2d at 959 (emphasis added); *see also Oliva*, 961 F.3d at 1363 ("damages for breach of contract require a showing of causation, which in turn necessitates a comparison between the breach and non-breach worlds." (cleaned up)).

The Claims Court's analysis was therefore incorrect because it reverses the breach of contract analysis. Instead of identifying BLM's alleged obligations under the Contract and considering whether any had been breached, it started with the alleged harm and attempted to identify a "contractually explicit basis," or obligation, that flowed from that harm. *Keyes*, 167 Fed. Cl. at 292. Specifically, the Claims Court began its analysis by stating that "[h]ere, the harm detailed at length by plaintiff centers on measured methane levels in defendant's deliveries to plaintiff." *Id.* It then concludes that because there is no obligation that corresponds to that harm, there can be no breach. *See id.* ("neither the contract nor plaintiff indicates how the detection of elevated methane levels is related to any contractual obligation."). That was error. The question is not whether "produced methane levels *trigger* any duty owed by defendant under the contract," *id.*, as the Claims Court states; it is whether the Contract prescribes an obligation of BLM that Keyes has plausibly shown to have been breached by BLM. And only after that is established, can one undertake a proper causation analysis to determine whether there are any "damages that stem from the breach." *Id.* (citing *San Carlos*, 877 F.2d at 959).

Here, Keyes' complaint plausibly establishes that (1) the Contract imposes an obligation on BLM's delivery, and (2) BLM subsequently breached that obligation. The Contract clearly obligated BLM to deliver "a helium-gas mixture containing *not less than 50 percent helium by volume*." J.A. 47–48, § 2.3(a) (emphasis added). And Keyes identifies at least two alleged instances where BLM delivered off-spec helium gas mixtures, including on December 15, 2020, and February 27, 2021. *See* J.A. 29–31 (December 2020

Off-Spec Delivery Event); J.A. 33 (February 2021 Off-Spec Delivery Event). In fact, Keyes alleged that, in at least one instance during December 2021, BLM's delivery contained a "level of methane content, as high as 62.6724%," J.A. 32, para 62, which necessarily breaches the requirement of "a helium-gas mixture containing *not less than 50 percent helium by volume*," J.A. 47–48, § 2.3(a). Moreover, Keyes also alleged that BLM previously admitted that it had delivered off-spec helium during administrative proceedings. J.A. 34, para 73. Taken together, Keyes' allegations have plausibly established BLM's breach of its delivery obligation under Section 2.3(a) of the Contract.

BLM relies on the Claim Court's interpretation "that [Section 2.3(b) of] the Contract 'anticipates that a delivery may contain less than 50 percent helium, and allows that in such an instance, defendant is not obligated to pay for the nonconforming delivery." Appellee Br. 15 (citing *Keyes*, 167 Fed. Cl. at 292; J.A. 48 § 2.3(b)). It argues that because Section 2.3(b) anticipates off-spec deliveries and that "in those circumstances, Keyes Helium is not obligated to pay," Appellee Br. 28, Section 2.3(b) of the Contract therefore operates to negate BLM's liability for off-spec deliveries, *id.* at 30. But Section 2.3(b) merely provides that Keyes agreed to compensate BLM for costs that it incurred for on-spec deliveries under Section 2.3(a), *i.e.*, deliveries that contains "not less than 50 percent helium by volume." J.A. 47–48, § 2.3(a). It does not absolve BLM of its liability for an express breach of Section 2.3(a).

In addition to alleging that the government breached its obligation to deliver a helium-gas mixture composed of not less than 50% helium under Section 2.3, the complaint also alleged that the government breached its agreement with Keyes by "[f]ailing to follow industry standard by delivering crude helium with methane levels more than double the amount generally accepted in the industry." J.A. 36. Helium industry standards allegedly set the maximum limit for methane in helium-gas mixtures at around

3%, *see* J.A. 30; *see also* J.A. 46 (requiring that helium delivered to the government be "no more than 3 percent methane (CH4) by volume). The Claims Court erred in failing to consider that maximum methane limitation standard in interpreting the contract, including whether the government's delivery obligation incorporated that standard and, if so, whether BLM's failure to perform accordingly gave rise to a breach of the agreement. *See Hunt Const. Grp., Inc. v. United States*, 281 F.3d 1369, 1373 (Fed. Cir. 2002) ("evidence of trade practice may be useful in interpreting a contract term having an accepted industry meaning," especially "where there is a term with an accepted industry meaning that was omitted from the contract.") (cleaned up). We do not at this stage decide whether industry practice would support a claim, only that the Claims Court erred in failing to consider it.

The Claims Court's dismissal of Keyes' breach of contract claim must therefore be reversed. This claim survives the 12(b)(6) stage and is remanded for further proceedings. On the merits, the court should consider whether Keyes' plausibly alleged breach of BLM's delivery obligation under Section 2.3(a) is causally connected to the resultant harm, *i.e.*, whether it was reasonably foreseeable that an off-spec helium gas mixture could contain elevated methane levels sufficient to cause damage to Keyes' facility and operations. Damages for breach of contract are recoverable where: "(1) the damages were reasonably foreseeable by the breaching party at the time of contracting; (2) the breach is a substantial causal factor in the damages; and (3) the damages are shown with reasonable certainty." *Kansas Gas & Elec. Co. v. United States*, 685 F.3d 1361, 1369 (Fed. Cir. 2012) (quotations and citation omitted).

Turning to the next issue, the Claims Court, while acknowledging that Keyes "did not enumerate a separate claim for breach of the implied duty of good faith and fair dealing," nonetheless held that such claim "must fail for the same reason that its breach of contract claim does." *See*

*Keyes*, 167 Fed. Cl. at 292 ("The contract imposes no duty on defendant to monitor the methane levels in its deliveries and thus, defendant bears no contractual responsibility for any asserted damage resulting from such conditions."). As discussed above, that sort of reverse breach of contract analysis is inappropriate, and thus the Claims Court's implied duty of good faith and fair dealing determination must be vacated and remanded for reconsideration.

On remand, the Claims Court should heed its own words, which explained that "[i]mplied in every contract is a duty of good faith and fair dealing." *Keyes*, 167 Fed. Cl. at 292 (citing *Precision Pine & Timber, Inc. v. United States*, 596 F.3d 817, 828 (Fed. Cir. 2010). And while, as the court states, "[t]he implied duty of good faith and fair dealing . . . 'cannot expand a party's contractual duties beyond those in the express contract,'" *Keyes*, 167 Fed. Cl. at 292 (citing *Precision*, 596 F.3d at 831), "all that the quoted language means is that the implied duty of good faith and fair dealing depends on the parties' bargain in the particular contract at issue," *Metcalf Const. Co. v. United States*, 742 F.3d 984, 994 (Fed. Cir. 2014).

The question therefore is not whether "[t]he contract imposes [a] duty on defendant to monitor the methane levels in its deliveries," *Keyes*, 167 Fed. Cl. at 292, because "[t]hat goes too far: a breach of the *implied* duty of good faith and fair dealing does not require a violation of an *express* provision in the contract." *See Metcalf*, 742 F.3d at 994 (rejecting the government's "constrain[ed] view . . . that there was no breach of the implied duty because 'Metcalf cannot identify a contract provision that the Navy's inspection process violated'"). Instead, the question is whether Keyes' complaint plausibly establishes that BLM's alleged breach of an implied duty frustrated Keyes' bargained-for benefit under the Contract, *i.e.*, receiving volumes of crude helium gas that it could refine and sell to its customers. *See id.* 994–95 (explaining that "[t]he implied duty of good faith and fair dealing . . . prevents a party's

acts or omissions that . . . are inconsistent with the contract's purpose and deprive the other party of the contemplated value").

The Claims Court also dismissed Keyes' alternative tort claim because it determined that it too rose and fell with its contract claim. *See Keyes*, 167 Fed. Cl. at 293 (holding that because "[Keyes'] breach of contract claim cannot stand . . . neither can [Keyes'] allegedly related tort claim"). Again, because the court's breach of contract analysis is flawed and because it relied on that analysis to dismiss the tort claim, we must vacate and remand its dismissal of that claim. On remand, the court should determine whether Keyes' "action sounds in contract," or whether Keyes "has stated an independent action in tort."[3] *Awad v. United States*, 301 F.3d 1367, 1372 (Fed. Cir. 2002). If Keyes' "action sounds in contract," it "is properly within the jurisdiction of the Court of Federal Claims." *Id.* If not, the court should either dismiss or transfer the independent tort claims accordingly.

Finally, we turn to Keyes' takings claim under the Fifth Amendment. As the Claims Court explained, "[Keyes] claims that its lost helium is the property interest at issue." *Keyes*, 167 Fed. Cl. at 293. On appeal, Keyes claims that it actually has two independent property rights at issue here: its "property interest in its facilities" and its property interest in "lost helium volumes." Appellant Br. 42. Regardless, Keyes' complaint regarding its takings claim, with respect to either property interest, was appropriately dismissed for failure to state a claim.

---

[3] The Claims Court appeared to address the merits of the tort claim while only assuming, but not determining, its jurisdiction over such claim. *See Keyes*, 167 Fed. Cl. at 293.

First, Keyes fails to state a claim regarding the taking of its "property interest in its facilities" because there is no allegation in the complaint that its physical facilities were taken for public use, *see* J.A. 38–39, which is a requirement for a takings claim. U.S. Const. amend. V; *see Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 543 (2005). Second, Keyes also fails to state a claim regarding the taking of its "lost helium volumes" because, as the Claims Court appropriately explains, any claim Keyes may have to lost helium volumes necessarily implicates the Contract through which Keyes receives that helium, and thus Keyes must seek relief through a breach of contract action. *Keyes*, 167 Fed. Cl. at 293; *see St. Christopher Assocs., L.P. v. United States*, 511 F.3d 1376, 1385 (Fed. Cir. 2008) ("In general, takings claims do not arise under a government contract because . . . the government is acting in its proprietary rather than its sovereign capacity, and because remedies are provided by the contract."). We therefore affirm the Claims Court's dismissal of Keyes' takings claim.

## CONCLUSION

We have considered Keyes remaining arguments and find them unpersuasive. For the foregoing reasons, we reverse the Claims Court's decision with respect to the breach of contract claim, vacate with respect to the implied duty of good faith and fair dealing and alternative tort claims, affirm with respect to the takings claim, and remand for consideration consistent with this opinion.

**AFFIRMED-IN-PART, REVERSED-IN-PART, VACATED-IN-PART, AND REMANDED**

## COSTS

No costs.